Alan J. Lipkin, Esq.
James H. Burbage, Esq.
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Attorneys for ID Wheel (FL) LLC and*
*IDrive Mezz Lender (FL) LLC*

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** | HEARING DATE:   May 31, 2018 |
| **SOUTHERN DISTRICT OF NEW YORK** | TIME:   10:00 A.M. |

------------------------------------------------------------ x
In re:                                                                         :    Chapter 11
                                                                                    :
Robert Francis Xavier Sillerman,                           :    Case No. 17-13633 (MKV)
aka Robert F.X. Sillerman,                                     :
aka Robert F. Sillerman,                                         :
aka Robert X. Sillerman,                                        :
                                    Debtor.                         :
------------------------------------------------------------ x

### LIMITED OBJECTIONS TO AND REQUEST FOR ADJOURNMENT OF HEARING ON THE DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO CAUSE RFXS, LLC, HIS NON-DEBTOR AFFILIATED ENTITY, TO RETAIN CASTLE PLACEMENT, LLC

ID Wheel (FL) LLC and IDrive Mezz Lender (FL) LLC (together, "**Lenders**"), by and through their undersigned counsel, submit these limited objections to and request for adjournment of the hearing on Robert Francis Xavier Sillerman's (the "**Debtor**" or "**Sillerman**") *Motion for an Entry of an Order Authorizing the Debtor to Cause RFXS, LLC, His Non-Debtor Affiliated Entity, to Retain Castle Placement, LLC* (the "**Motion**")[1] [Docket No. 56]. In support of these objections, Lenders respectfully state as follows:

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**PRELIMINARY STATEMENT**

1. Through the Motion the Debtor seeks authorization to incur substantial obligations (a minimum of $250,000 and potentially millions of dollars more) to Castle Placement, LLC ("**Castle**") to procure $35 million of financing. The desired loan proceeds then would be used to make speculative investments in the Debtor's existing business holdings with the hope of enhancing their value and generating liquidity. Among its numerous defects, the Motion: (a) is not supported by independent analysis or sworn affidavits, relying instead on unsworn attorney assertions; (b) fails to relate the proposed investments and hoped for liquidity to the magnitude of creditor debt to be addressed in this case; (c) fails to address alternative less risky strategies such as selling assets or using loan proceeds to pay creditors directly; and (d) fails to address conflicts of interest inherent in the proposed investment arrangements.

2. Such concerns require the oversight of a creditors' committee in this case. As such a committee hopefully will be appointed soon, the hearing on the Motion should be adjourned pending committee input. Absent such an adjournment, the Motion should be denied due to its multiple flaws.

**BACKGROUND**

3. To date, the Debtor has conducted this case without urgency. An involuntary chapter 7 petition was filed against the Debtor on December 26, 2017. The Debtor did not respond to that petition until he filed a February 2, 2018 motion [Docket No. 6] seeking conversion of the involuntary chapter 7 case into a voluntary chapter 11 case. The Debtor's motion was granted by Order, dated March 1, 2018 [Docket No. 26]. Thereafter, the Debtor adjourned his originally scheduled § 341 meeting with creditors, but attended such a meeting on May 4, 2018. The Debtor did file Schedules of Assets and Liabilities [Docket No. 29], which suggest he has approximately

$60 million of secured liabilities, at least $60 million of unsecured liabilities, and over $500 million of largely illiquid assets.

4.  Among his liabilities, the Debtor scheduled indebtedness to Lenders ID Wheel (FL) LLC ("**ID Wheel**") and IDrive Mezz Lender (FL) LLC based, respectively, on his guaranties of a $35,000,000 loan and $2,730,000 of another loan. ID Wheel understands its underlying loan is or soon will be in default and will not be repaid in full absent a significant payment by Mr. Sillerman as guarantor.

5.  Although it did not receive a solicitation from the United States Trustee (the "**UST**"), on April 5, 2018, ID Wheel timely submitted an application to the UST for appointment to an official unsecured creditors' committee in this case. After weeks passed without hearing from the UST, ID Wheel made several attempts to contact the UST about the status of committee formation. Eventually, the UST's office disclosed that too few creditors had applied to form a committee. ID Wheel then promptly contacted other unsecured creditors who submitted applications for committee membership. Again, weeks went by without hearing from the UST. Ultimately, on May 14, 2018, ID Wheel learned the UST did not believe sufficient qualified candidates had applied to form a committee. Accordingly, ID Wheel contacted additional unsecured creditors, at least one of whom recently submitted an application for appointment to a committee in this case. Consequently, an official creditors' committee should soon be appointed.

6.  Last week Lenders requested the Debtor to agree to an adjournment of the May 31, 2018 hearing on the Motion pending appointment of a creditors' committee. Debtor's counsel rejected that request, asserting a newfound urgency to move this case along.

**LIMITED OBJECTIONS**

7. Among other things, granting the Motion would: (a) impose on the Debtor a minimum fee obligation of $250,000 and potentially millions of dollars of additional obligations as well as lock the Debtor into a fee arrangement with Castle that requires payment of substantial fees regardless of whether Castle actually plays a role in obtaining financing (other than one phone call) and due to a "tail", even if the financing develops 12 to 18 months after Castle's services are terminated; and (b) set the Debtor on a course to make $35,000,000 of speculative investments in illiquid business interests without regard to: (i) any determination of how much would be needed to satisfy creditors' claims in this case; (ii) any consideration of selling or borrowing against the Debtor's assets to pay creditors directly; or (iii) any evaluation of the extensive conflicts of interest inherent in the investments for which the Motion seeks funding. Equally problematic, the Motion seeks such extraordinary relief without the support of a sworn affidavit or expert opinion. Instead, the Motion relies entirely on unsworn allegations of Mr. Sillerman's attorney.

8. All these concerns, which are elaborated below, demonstrate that the hearing on the Motion should be adjourned until an official committee is appointed and ready to provide input. Alternatively, the Motion should be denied due to the concerns listed herein, among others.

9. First, the Motion fails to discuss, let alone consider use of the Debtor's "hard" assets. According to the Debtor's Schedule of Assets [Docket No. 29], Mr. Sillerman has, among others, the following assets with the following ascribed values:

| Asset | Value (000) |
|---|---|
| Home at 151 East 72nd St., New York, NY | $20,200 |
| Home in Hinsdale, NH | 1,057 |
| 5 automobiles and ATVs | 83 |
| Personal and Household goods | 176 |
| Limited Liability Company Interests | 440,728 |
| Tax Refunds Due to Debtor | 2,441 |
| Notes Receivable Due to Debtor | 6,781 |
| Golf Club Memberships | 2,366 |
| Indirect ownership of 3 homes and vacant land in Southampton, NY | 24,500 |
| Indirect ownership of 0.4% Interest in Yankees/Nets | 8,956 |

While some of these assets are pledged as collateral, many are not.[2]

10.    A second defect in the Motion is that it provides insufficient analysis of and rationale for the relief requested. The Motion focuses entirely on raising $35 million to fund the Debtor's wish list of investments although the proposed investments are not supported by a meaningful analysis, a sworn declaration, or the input of a qualified expert. Instead, the only support is unsworn assertions by the Debtor's counsel. Moreover, the Motion makes no attempt to match any potential liquidity generated by the proposed investments with the amount of funds necessary to satisfy the aggregate claims against the Debtor. Correspondingly, the Motion fails to address whether selling or borrowing against the Debtor's "hard" assets listed in the chart above could raise sufficient funding to satisfy creditors directly or to fund less risky investments than those contemplated by the Motion. Rather, the Motion solely contemplates speculative investments under which the Debtor's creditors would bear essentially all of the risk while Mr. Sillerman would obtain all the upside.

---

[2]    Allegedly, Mr. Sillerman's wife owns one half of the scheduled New York City home and Southampton real estate interests. In the chart, the value estimate for the Debtor's Limited Liability Company Interests excludes the values ascribed to the limited liability companies holding the Southampton real estate and Yankees/Nets ownerships, which are listed separately.

- 5 -

11.     A third questionable element of the Debtor's proposed retention of Castle is the financial terms.  The Motion seeks authorization for RFXS, LLC to pay Castle a minimum fee of $250,000 and potentially far more.  The engagement letter provides Castle with both success fees and a 12 to 18 month "tail" under which Castle could obtain substantial additional compensation without any showing of benefit to the Debtor's estate.  *See* Motion ¶¶ 20-22.  Another example of questionable compensation for Castle is that Mr. Sillerman is listed as a potential investor on Schedule VI of Exhibit A to the agreement between Castle and RFXS, LLC, meaning Castle could receive a significant transaction fee if Mr. Sillerman lends money to an LLC that he controls.  This unusual fee arrangement requires explanation and justification absent in the Motion.

12.     A fourth problem with the proposed Castle retention is its mechanics.  Rather than directly retaining Castle, the Debtor proposes – without explanation – to retain Castle through RFXS, LLC, an otherwise inactive non-debtor limited liability company with no assets.  Additionally, the proposed agreement between RFXS, LLC and Castle defines "Company" to include "existing affiliates, and other entities with common officers, employees, management, control or ownership."  *See* Motion, ¶ 18 and Exhibit A at 2.  This definition raises multiple unanswered questions, including, because no list of such entities is provided, which entities have potential liability here, and whether the included entities raise any conflict of interest issues.

13.     A fifth concern is that the Motion's requested retention of Castle is ripe for additional potential conflicts of interest.  The Debtor's limited liability companies have other investors including his wife and potentially other related parties.  *See* Motion ¶ 14.  The Motion provides no disclosure of the related parties' interests, how they might be impacted by the proposed financing, or in which business entities such parties have investments.

14. All these deficiencies highlight the need for a creditors' committee review of and input on the Motion. Thus, consideration of the Motion now would be premature and could push the Debtor's reorganization process down a potentially harmful path. Accordingly, adjournment of the Motion until a creditors' committee is formed and has sufficient opportunity to evaluate the Motion is appropriate. Alternately, the Motion should be denied due to its numerous defects.

## CONCLUSION

**WHEREFORE**, Lenders respectfully requests that the Court: (a) adjourn the hearing on or deny the Motion; and (b) grant Lenders such other and further relief as the Court may deem just and proper.

Dated: May 29, 2018

WILLKIE FARR & GALLAGHER LLP

By: _____
Alan J. Lipkin, Esq.
James H. Burbage, Esq.
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Attorneys for ID Wheel (FL) LLC and IDrive Mezz Lender (FL) LLC*