**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re

| | |
|---|---|
| Robert Francis Xavier Sillerman | Chapter 11 |
| aka Robert F.X. Sillerman, | |
| aka Robert F. Sillerman, | Case No. 17-13633 (MKV) |
| aka Robert X. Sillerman, | |

                                                      Debtor.

-------------------------------------------------------------x

# DEBTOR'S PLAN OF REORGANIZATION

Sanford P. Rosen
ROSEN & ASSOCIATES, P.C
747 Third Avenue
New York, NY 10017-2803

*Counsel for the Debtor and Debtor in Possession*

Dated: October 31, 2018

Robert F.X. Sillerman (the "**Debtor**"), hereby proposes the following Chapter 11 plan (the "**Plan**") pursuant to sections 1121(c) and 1123 of title 11 of the United States Code (the "**Bankruptcy Code**"). Reference is made to the Disclosure Statement that will be filed with the Bankruptcy Court subsequent to the filing the Plan for a discussion of certain transactions and other matters germane to the implementation of the Plan and the Debtor's Chapter 11 Case, as well as a summary discussion of the terms and conditions of the Plan.

## ARTICLE I
Definitions and Construction of Terms

The following terms utilized in the Plan shall have the following definitions:

1.1     Administrative Expense Claim(s) means, except as otherwise set forth in this Plan, a Claim (or a portion of a Claim) for any cost or expense of administration in connection with the Chapter 11 Case, including, without limitation, any actual, necessary costs and expenses of preserving the Debtor's Estate, and all fees and charges assessed against the Debtor's Estate, as defined herein, pursuant to 28 U.S.C. § 1930. The term Administrative Expense Claim does not include Professional Fee Claims or Priority Claims, as defined herein and which are treated separately in this Plan.

1.2     Administrative Expense Claim Reserve means any Cash held in a reserve to be established and maintained by the Debtor in accordance with the terms and conditions of this Plan.

1.3     Allowed means, with reference to any Claim (including any Administrative Expense Claim) that portion of a Claim: (i) which has been allowed by a Final Order; (ii) which is allowed under the terms of this Plan; or (iii) (a) which has been scheduled by the Debtor as not disputed, not contingent and not unliquidated, or (b) for which a proof of claim was timely and otherwise properly filed on or before the Bar Date with the Bankruptcy Court, and with respect to Claims described in this clause (iii) as to which no objection to the allowance thereof has been interposed within the period of time fixed by the Bankruptcy Code, the Plan, the Bankruptcy Rules or an order of the Bankruptcy Court, or as to which any objection has been determined by a Final Order of the Bankruptcy Court allowing such Claim or any portion thereof. Except as otherwise specifically set forth in this Plan, each Allowed Claim shall be net of any valid setoff exercised with respect to such Claim pursuant to the Bankruptcy Code and applicable law.

1.4     Assets mean (a) all assets and properties of every kind, nature, character and description, whether real, personal, or mixed, whether tangible or intangible (including contract rights), wherever situated and by whomever possessed, including the goodwill related thereto, operated, owned, or leased by, or an behalf of, the Debtor that constitute property of the Estate within the meaning of section 541 of the Bankruptcy Code, including, without limitation, Cash, any and all Claims, Causes of Action, or rights of  the Debtor under federal, state or foreign law, letters of credit issued for or on behalf of the

Debtor and the monies deposited to secure the performance of any contract or lease by the Debtor; and (b) the proceeds, products, rents, and/or profits of any of the foregoing.

1.5    Avoidance Actions mean any action arising under chapter 5 of the Bankruptcy Code, including, sections 544, 545, 546, 547, 548, 549, 550 and 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation has been commenced as of the Confirmation Date to prosecute such actions.

1.6    Ballot means the form distributed to each holder of a Claim against the Debtor that is entitled to vote to accept or reject the Plan on which is to be indicated, among other things, acceptance or rejection of the Plan.

1.7    Bankruptcy Code means title 11 of the United States Code, 11 U.S.C. § 101, et. seq., as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to this Chapter 11 Case.

1.8    Bankruptcy Court means the United States Bankruptcy Court for the Southern District of New York and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom, or any successor thereto that may be established by any act of Congress, or otherwise, and which has competent jurisdiction over the Chapter 11 Case or the Plan.

1.9    Bankruptcy Rules mean (i) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court, as provided under section 2075 of title 28 of the United States Code, as such Rules may be amended from time to time, and (ii) any Local Rules of the Bankruptcy Court.

1.10    Bar Date means September 28, 2018, which was the date fixed in the Bar Date Order as the deadline to file a proof of Claim in the Chapter 11 Case.

1.11    Bar Date Order means the Order Establishing September 28, 2015 as the Deadline for Filing Proofs of Claims and Approving the Form and Manner of Notice Thereof, entered by the Bankruptcy Court on August 24, 2018.

1.12    Business Day means any day other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.13    Case Professionals mean all Persons retained pursuant to a Final Order of the Bankruptcy Court who are to be compensated pursuant to sections 326, 327, 328, 330, and 1103 of the Bankruptcy Code.

1.14    Cash means cash or cash equivalents, including, but not limited to, wire transfers, checks, other readily marketable direct obligations of the United States of America, and certificates of deposit issued by a federally insured depository institution.

1.15    Cause(s) of Action means, without limitation, (a) all pending suits to which the Debtor is a party, whether as plaintiff or defendant, as of the date the Confirmation Order becomes a Final Order, and (b) any and all other actions, proceedings, causes of action, liabilities, obligations, suits, accounts, controversies, agreements, rights to legal remedies, rights to equitable remedies, rights to payment and claims, damages, judgments, claims and demands whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertible directly or derivatively, in law, equity or otherwise, existing or hereafter arising, to which the Debtor had any rights or obligations whatsoever, based in whole or in part upon any act or omission or other event occurring prior to the Order for Relief Date, during the course of the Chapter 11 Case (including through the Effective Date), including, without limitation, all Avoidance Actions.

1.16    Chapter 11 Case means the case under Chapter 11 of the Bankruptcy Code commenced against the Debtor, bearing the caption In re: Robert Francis Xavier Sillerman aka Robert F.X. Sillerman, aka Robert F. Sillerman, aka Robert X. Sillerman, Case No. 1817-13633 -MKV and pending before the Bankruptcy Court.

1.17    Claim means any "claim" within the meaning of section 101(5) of the Bankruptcy Code.

1.18    Class means a category of holders of Claims as set forth in Article III and IV of the Plan.

1.19    Confirmation Date means the date on which the Confirmation Order is entered on the docket in the Chapter 11 Case and the conditions set forth in Section 10.1 of the Plan have been satisfied.

1.20    Confirmation Hearing means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.21    Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.22    Creditor means any holder of a Claim against the Debtor or the Estate or holder of any Claim against property of the Debtor or the Estate.

1.23    Debtor means Robert Francis Xavier Sillerman aka Robert F.X. Sillerman, aka Robert F. Sillerman, aka Robert X. Sillerman.

1.24    <u>Disclosure Statement</u> means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented, or modified from time to time and as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.25    <u>Disclosure Statement Approval Order</u> means that certain order entered by the Bankruptcy Court approving the Disclosure Statement.

1.26    <u>Disputed</u> means every Claim that is not yet Allowed.

1.27    <u>Disputed Claims Reserve</u> means any Cash held in a reserve to be established and maintained by the Debtor, and funded by the Debtor, in amounts sufficient for the Debtor to make Distributions under the Plan on account of all Disputed Claims in the event, and to the extent, they become Allowed Claims. For the avoidance of doubt, the amount retained on account of a Disputed Claim shall be the lesser of the amount of such Claim as (i) asserted by the holder of such Claim against the Debtor, or (ii) estimated for the purposes of the Plan by Final Order of the Bankruptcy Court; <u>provided, however,</u> the Debtor shall not be required to retain any amount on account of contingent or unliquidated Claims. Any portion of a Disputed Claim that is disallowed by Final Order of the Bankruptcy Court, or waived by the holder of such Claim, shall become available to the Debtor to distribute in accordance with the terms and conditions of the Plan.

1.28    <u>Distribution(s)</u> means the distribution or distributions on account of Allowed Claims to be made by the Debtor in accordance with the terms and conditions of the Plan.

1.29    <u>Effective Date</u> means the fifth Business Day on or after the Confirmation Date, on which the conditions precedent to the effectiveness of the Plan specified in Section 10.2 of the Plan shall have been satisfied.

1.30    <u>Entity</u> shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

1.31    <u>Estate</u> means the estate of the Debtor in the Chapter 11 Case, created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

1.32    <u>Exculpated Claim</u> means any Claim, Cause of Action, obligation or liability asserted or assertable against the Exculpated Parties, related to any act or omission in connection with, relating to, or arising out of the Chapter 11 Case and any proceeding therein; including, without limitation, the Debtor's administration of the Estate, the Distribution of any Asset of the Estate; the formulation, preparation, dissemination, negotiation and promulgation of this Plan and the accompanying Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, or the pursuit of confirmation of this Plan or the administration and implementation of this Plan; <u>provided, however,</u> Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct or fraud. For the avoidance of doubt, no Cause of Action,

obligation or liability expressly set forth in or preserved by this Plan constitutes an Exculpated Claim.

1.33    Exculpated Party means the Case Professionals, including: Rosen & Associates, P.C.

1.34    Executory Contract means any executory contract or unexpired lease subject to section 365 of the Bankruptcy Code, between the Debtor and any other Person.

1.35    Final Order means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal or move for reargument or for a rehearing or for leave to appeal has expired, or (b) if an appeal has been sought, no stay (temporary or otherwise) pending appeal has been obtained.

1.36    Financing means the loan(s) and other financial accommodations to be provided to the Debtor, the proceeds of which shall be invested by the Debtor in the initiatives discussed in Section 5.1(b), below.

1.37    General Unsecured Claim means a Claim which is not an Administrative Expense Claim, a Secured Claim, a Priority Claim, or a Professional Fee Claim, including Claims arising between the Petition Date and the Order for Relief Date.

1.38    Impaired means when used with reference to a Claim, a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.39    Insider shall have the meaning given to such term as defined in section 101(31) of the Bankruptcy Code.

1.40    Involuntary Petition means the petition under Chapter 7 of the Bankruptcy Code that was filed against the Debtor by the Petitioning Creditors

1.41    Lien has the meaning given to such term in section 101(37) of the Bankruptcy Code (but a lien that has or may be avoided pursuant to an Avoidance Action shall not constitute a Lien).

1.42    Order for Relief Date means March 1, 2018, the date the order for relief in the Chapter 11 Case was entered.

1.43    Other Priority Claim means any Claim, other than an Administrative Expense Claim, a Secured Claim, a Priority Tax Claim, or a General Unsecured Claim.

1.44    Person means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

1.45    <u>Petition Date</u> means December 27, 2017, the date the Involuntary Petition was filed against the Debtor.

1.46    <u>Plan</u> means this Chapter 11 Plan, including, without limitation, any exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time.

1.47    <u>Plan Distribution Funds</u> means (i) all unrestricted Cash on hand in the Debtor's accounts; (ii) proceeds, if any, from the liquidation of any Assets; and (iii) proceeds from the Financing, which monies shall be used to fund Distributions in accordance with the terms and conditions of the Plan.

1.48    <u>Plan Distribution Account</u> means the escrow account to be created by the Debtor's counsel prior to the Confirmation Hearing.

1.49    <u>Plan Supplement</u> means the compilation of documents, including any exhibits to the Plan not included herewith, that the Debtor shall file with the Bankruptcy Court at least ten (10) days prior to the deadline established by the Bankruptcy Court for filing objections to Confirmation of the Plan (or at such later date as may be approved by the Bankruptcy Court).

1.50    <u>Priority Claim</u> means a Claim that is either a Priority Tax Claim or Other Priority Claim.

1.51    <u>Priority Tax Claim</u> means any Claim which is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.52    <u>Professional Fee Claim</u> means Claims of Case Professionals or any other Person for compensation and / or reimbursement of expenses pursuant to sections 327, 328, 330, or 331 of the Bankruptcy Code.

1.53    <u>Professional Fee Claim Reserve</u> means any Cash held in a reserve to be established and maintained by the Debtor in accordance with the terms and conditions of this Plan.

1.54    <u>Released Party</u> means each of the following in its capacity as such, and only in its capacity as such: (a) the Debtor and (b) the Case Professionals.

1.55    <u>Schedules</u> means the schedules of assets and liabilities and the statement of financial affairs filed with the Bankruptcy Court by the Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 on, March 16, 2018, as such schedules and statements have been or may be supplemented or amended from time to time.

1.56    <u>Secured Claim</u> means any Claim other than a Claim which is an Administrative Expense Claim, a Priority Claim, a Professional Fee Claim, or a General Unsecured Claim.

1.57    <u>Unimpaired</u> means when used with reference to a Claim, a Claim that is not Impaired

within the meaning of section 1124 of the Bankruptcy Code and is designated as such under Article III of this Plan.

1.58    <u>United States Trustee</u> means the United States Trustee appointed undersection 591, title 28, United States Code to serve in the Southern District of New York.

1.59    <u>United States Trustee Fees</u> means all fees and charges assessed against the Estate under section 1930 of title 28 of the United States Code, and interest, if any, for delinquent fees pursuant to section 3717 of Title 31 of the United States Code.

<u>Interpretation; Application of Definitions and Rules Construction</u> Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule or exhibits references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan. The words "herein", "hereof", "hereto", "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Unless otherwise indicated herein, all references to dollars means United States dollars.

## **ARTICLE II**
### Treatment of Administrative
### Expense Claims and Priority Tax Claims

2.1    <u>Non-Classification</u>. As provided in section 1123(a) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims, and Professional Fee Claims are not classified for purposes of voting on or receiving Distributions under the Plan. All such Claims are instead treated separately in accordance with the terms and conditions set forth in this Article II.

2.2    <u>Administrative Expense Claims.</u> Following the Effective Date, the Debtor shall establish and fund the Administrative Expense Claim Reserve as forth in Article V of the Plan. Except to the extent that any Person or Entity entitled to payment of an Allowed Administrative Expense Claim agrees to a different treatment, each holder of an Allowed Administrative Expense Claim (other than a Professional Fee Claim or Priority Tax Claim specifically addressed below) shall (i) receive Cash in an amount equal to such holder's Allowed Administrative Expense Claim on the Effective Date or as soon as practicable after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or (ii) be assumed and paid in the ordinary course by the Debtor, after the occurrence

of the Effective Date; provided, however, the Debtor shall be responsible for the satisfaction of United States Trustee Fees arising under 28 U.S.C. § 1930 and 31 U.S.C. § 3717 from the Effective Date through the entry of a final decree closing the Chapter 11 Case. Each holder of an Administrative Expense Claim (other than a Professional Fee Claim or Priority Tax Claim) is required to file a proof of Administrative Expense Claim within thirty (30) days after the Effective Date. Nothing herein extends any Bar Date previously established by the Bankruptcy Court. Any request for payment of an Administrative Expense Claim (other than a Professional Fee Claim or Priority Tax Claim) that is not timely filed as set forth above shall be forever barred, and holders of such Claims shall not be able to assert such Claims in any manner against the Debtor or the Estate or any of the foregoing parties' accountants, advisors, agents, attorneys, consultants, directors, employees, members, officers, representatives, or Case Professionals.

The Debtor shall have ninety (90) days after the Effective Date to file objections, if any, to Administrative Expense Claims (other than a Professional Fee Claim or Priority Tax Claim) and serve such objections upon the holder of the affected Claim. The Debtor shall have the right to seek authority from the Bankruptcy Court to extend the dates for filing and serving the objections to the holders of such Claims.

2.3    Priority Tax Claims. Except to the extent that the Debtor determines to make Distributions to the holder of a Priority Tax Claim in accordance with the provisions of section 1129(a)(9)(C) of the Bankruptcy Code, or the holder of an Allowed Priority Tax Claim has been satisfied prior to the Effective Date or agrees to a different treatment, the Debtor shall pay to each holder of an Allowed Priority Tax Claim, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim on the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable, with interest as may be required by the Bankruptcy Code and provided under applicable non-bankruptcy law.

2.4    Professional Fee Claims. Following the Effective Date, the Debtor shall establish, and the Debtor shall fund, the Professional Fee Claims Reserve as set forth in Article V of the Plan. All Persons and Entities seeking an allowance of their Professional Fee Claim for services rendered and expenses incurred through and including the Confirmation Date under sections 330 or 331 of the Bankruptcy Code shall file their respective applications for allowance of their Professional Fee Claim by not later than the date which is thirty(30) days after the Confirmation Effective Date or such other date as may be fixed by the Bankruptcy Court, and if granted, the Allowed Professional Fee Claim filed by the Bankruptcy Court shall be paid by the Debtor in full, in Cash and in such amounts as are Allowed by the Bankruptcy Court (i) on the date upon which such Professional Fee Claim becomes an Allowed Claim or as soon thereafter as is practicable, (ii) upon such other terms as may be mutually agreed upon between the holder of an Allowed Professional Fee Claim and the Debtor, or (iii) in accordance with the terms and conditions of any applicable order entered by the Bankruptcy Court.

## ARTICLE III
Classification of Claims and Interests

Other than Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims, Claims are classified for all purposes, including voting, confirmation and Distribution pursuant to the Plan, as set forth below:

| | | |
|---|---|---|
| Class I | Allowed Secured Claims | Unimpaired/Deemed to Accept |
| Class II | Allowed Other Priority Claims | Unimpaired/Deemed to Accept |
| Class III | Allowed General Unsecured Claims | Unimpaired /Deemed to Accept |

## ARTICLE IV
Treatment of Claims

4.1    Class I: Secured Claims.

(a)    Classification. Class I consists of Allowed Secured Claims

(b)    Treatment. Except to the extent that a holder of an Allowed Secured Claim has agreed to less favorable treatment, each holder of an Allowed Secured Claim shall, at the option of the Debtor (i) be paid the Allowed amount of such Secured Claim in full, in Cash in accordance with Article V of this Plan, in full and final satisfaction of such Claim; (ii) receive delivery of the collateral securing such Allowed Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code, or (iii) be paid by the Debtor from and after the Effective Date in the amounts and on the terms and conditions of the underlying agreements evidencing such Secured Claims, and the holders of such Allowed Secured Claims shall retain all of the rights provided to such holders under such agreements, without modification by the Plan, including without limitation, the Liens securing such Allowed Secured Claims, provided, however, on the Effective Date; the Debtor shall satisfy any amounts owed to the holders of Allowed Secured Claims (including any attorney's fees and late charges) that have accrued prior to the Effective Date and remain unpaid.

The holders of the Allowed Secured Claims shall retain the Liens, if any, securing their respective Allowed Secured Claim until full and final payment of such Allowed Secured Claim is made as provided herein. Further, pending satisfaction of an Allowed Secured Claim, the loan documents and judgment liens pertaining to the Allowed Secured Claim shall remain in full force and effect, provided, however, that the remedies available to the holder of the Allowed Secured Claim under any retained security interest and the loan

9

documents and judgment lien giving rise to the Claim, including the right to exercise secured party rights, shall be exercisable only in the event the Debtor defaults on the payment obligations hereunder. The holders of the Allowed Secured Claims shall have no recourse against the Estate or the Debtor.

(c)　　<u>Voting.</u> Class I is Unimpaired. Each holder of an Allowed Secured Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.2　　<u>Class II: Other Priority Claims.</u>

(a)　　<u>Classification.</u> Class II consists of Allowed Other Priority Claims.

(b)　　<u>Treatment.</u> Except to the extent that a holder of an Allowed Other Priority Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, the Debtor shall pay to each holder of an Allowed Other Priority Claim, in full and complete settlement, satisfaction and discharge of its Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim on the later to occur of (a) the Effective Date or (b) the date such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon thereafter as is practicable.

(c)　　<u>Voting.</u> Class II is Unimpaired. Each holder of an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.3　　<u>Class III: General Unsecured Claims.</u>

(a)　　<u>Classification.</u> Class III consists of Allowed General Unsecured Claims.

(b)　　<u>Treatment.</u> On the earlier to occur of (a) the Effective Date or (b) upon becoming an Allowed Claim, or as soon as practicable thereafter, holders of Allowed General Unsecured Claims shall receive, in full and final satisfaction, release and settlement of such Allowed Claim, a Distribution in Cash from the Plan Distribution Account in the amount of their Allowed Claim.

(c)　　<u>Class III is Unimpaired.</u> Each holder of an Allowed General Unsecured Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject Plan.

**<u>ARTICLE V</u>**
Implementation of the Plan

5.1　　<u>Plan Funding.</u>

10

(a)    Plan Distribution Account. The Plan shall be funded by Cash on deposit in the Plan Distribution Account on the Effective Date.  At least five (5) days prior to the Confirmation Hearing, the Debtor shall deposit all Plan Distribution Funds into the Plan Distribution Account. The Debtor anticipates that the proceeds from the disposition of Assets constituting non-real estate collateral will be a part of Plan Distribution Funds, available for distribution on account of Allowed Secured Claims

(b)    Debtor Funding.  Over the past several years the Debtor has invested over $150 million in three (3) new operating initiatives in the digital space. The filing of the Involuntary Petition precluded the Debtor from making the final investment in all three. Based upon the advice of third parties as well as appraisals, the Debtor believes that the final investments will create approximately $500 million of value.

One of these entities is obligated to share with the Debtor funds raised in excess of $50 million, such that the Debtor will be entitled to 48% of such funds, up to a maximum $154 million. This entity is pursuing two initiatives that seek to raise $600 million in total, more than enough to fund the Debtor's share of $154 million.

(c)    Financing.  The other two entities will be public companies. By a reverse merger of each entity into a fully compliant public shell, the shares of each will be publicly traded. The reverse mergers are well underway.

The Debtor anticipates obtaining Financing to fund investments in these operating initiatives. The Financing, which the Debtor estimates will yield proceeds of approximately $20 million, will take place simultaneously with or shortly after an agreed upon number of transactions have taken place that generate a minimum amount of historical pro forma cash flow. As discussed in Article X, below, Closing of the Financing is a condition precedent of Confirmation.

Subject to having a minimum number of shareholders, these entities will be able to access, almost immediately, various elements of the capital markets. The Debtor's shares, which will be valued at over $300 million, will be restricted, subject to a six-month holding period; however, these shares will provide leverage for additional financing, if necessary, to obtain the funds necessary to make the Distributions pursuant to the Plan.

5.3    Distributions on Account of Allowed Claims. As provided for below and elsewhere in this Plan, the Debtor's counsel shall administer the Plan Distribution Account and make Distributions therefrom in accordance with the following procedures and priorities:

(a)    First, to make Distributions as necessary to satisfy Allowed Administrative Expense Claims as set forth in Section 2.2 of the Plan, and retain in the Plan Distribution Account (i) an amount of Cash, reasonably determined by the Plan Administer in his discretion, to be held as the Administrative Expense Claim Reserve sufficient for any future Distributions on account of Allowed Administrative Expense

11

Claims, and (ii) an amount of Cash, reasonably determined by the Debtor to be held as the Professional Fee Claim Reserve sufficient for any future Distributions on account of Allowed Professional Fee Claims; and

(b)    Second, to make Distributions as necessary to satisfy the Allowed Claims in Classes I, II, and III pursuant to the terms of this Plan in the order of priority as set forth in the Plan, and to retain in the Plan Distribution Account an amount of Cash to fund the Disputed Claims Reserve in accordance with the terms and conditions of the Plan.

5.4    Vesting of Assets. Except as otherwise provided in this Plan and the Confirmation Order, and after all Distributions in accordance with Section 5.3 of this Plan have been made, all Assets remaining in the Plan Distribution Account shall vest in the Debtor pursuant to section 1141(b) of the Bankruptcy Code, in each case free and clear of all Claims, Liens and Interests.

5.5    Liquidation of Remaining Assets. From and after the Effective Date, except as otherwise expressly provided herein, the Debtor may, without further approval of the Bankruptcy Court, use, sell at public or private sale, assign, transfer, or otherwise dispose of any remaining Assets and convert same to Cash to the extent necessary to make Distributions on account of Allowed Claims.

5.6    Post-Confirmation Date Fees and Expenses. Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtor may pay the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtor and his professionals in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

5.7.    Payment of Quarterly Fees. After the Confirmation Order becomes a Final Order, the Debtor shall Pay quarterly fees, pursuant to 28 U.S.C. § 1930(a)(6), to the United States Trustee until the Chapter 11 Case has been converted, dismissed or closed by the Bankruptcy Court.

5.9    Effectuating Documents. The Debtor may execute, de liver, file, or record such contracts, instruments, releases, indentures, and other agreements and documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

5.10    Direction to Parties. From and after the Effective Date, the Debtor may apply to the Bankruptcy Court for an order directing any necessary Entity to execute or deliver, or to join in the execution or delivery of, any instrument required to perform any act that is necessary for the consummation of the Plan, pursuant to section 1142(b) of the Bankruptcy Code.

12

**ARTICLE VI**
Provisions Governing Distributions and Voting on the Plan

6.1    Distributions. As set forth in Section 5.3 above, the Debtor shall make all
Distributions from the Plan Distribution Account. Whenever any Distribution shall be due
on a day other than a Business Day, such Distribution shall instead be made, without
interest, on the day immediately succeeding a Business Day, but shall be deemed to have
been made on the date due. For federal income tax purposes, a Distribution will be allocated
to the principal amount of a Claim first and then to the extent the Distribution exceeds the
principal amount of the Claim, to the portion of the Claim representing accrued but unpaid
interest, to the extent applicable.

6.2    Timing of Distributions. Each Distribution shall be made on the Effective Date or
as soon as reasonably practicable thereafter.

6.3    Address for Delivery of Distributions. If any Distribution is returned to the Debtor as
undeliverable, no Distributions shall be made to such holder unless the Debtor is notified of
such holder's then current address within ninety (90) days after such Distribution was
returned. After such date, if such notice was not provided, a holder shall have forfeited its
right to such Distribution, and the undeliverable Distributions shall be reallocated and
distributed to the other holders of Allowed Claims in accordance with the Plan.

6.4    Distributions under Twenty-Five Dollars. The Debtor shall
not be required to make any Cash payment of less than twenty-five dollars ($25.00) with
respect to any Claim unless a request therefor is made in writing to the Debtor on or before
twenty (20) days after the Effective Date. Any such Distributions not subject to a timely
request for payment shall be distributed by the Debtor to the other holders of Allowed
Claims in accordance with the Plan.

6.5    Time Bar to Cash Payments. Checks issued in respect of Allowed Claims shall be
null and void if not negotiated within ninety (90) days after the date of issuance thereof.
Requests for reissuance of any voided check shall be made directly to the Debtor by the
holder of the Allowed Claim to whom such check was originally issued. Any Claim in
respect of such voided check shall be made on or before 120 days from the date on which
such original Distribution was made. If no Claim is made as provided in the preceding
sentence, any Claims in respect of such void check shall be discharged and forever barred
and such unclaimed Distribution shall be reallocated and distributed to those other holders
of Allowed Claims in accordance with the Plan.

6.6    Unclaimed Distributions at Closing of Bankruptcy Case. In the event that any
unclaimed Distributions exist on the date the Bankruptcy Court enters a Final Order and
decree closing the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code and
Rule 3022 of the Federal Rules of Bankruptcy Procedures, such Distributions shall be
deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and shall
revert to the Debtor, and the Claims with respect to which those Distributions are made
shall be automatically cancelled. After the expiration of that period, the claim of any Person
to those Distributions shall be deemed forfeited. Nothing contained in the Plan shall require

13

the Debtor to attempt to locate any holder of an Allowed Claim. All Cash or other Assets that revert to the Debtor pursuant to this Article VI shall be distributed by the Debtor in accordance with the terms and conditions of the Plan.

6.7    Manner of Payments under the Plan. Unless the Person or Entity receiving a Distribution agrees otherwise, any Distribution to be made in Cash under the Plan shall be made, at the election of the Debtor by check drawn on a domestic bank or by wire transfer from a domestic bank.

6.8    Setoffs and Recoupment. Except as otherwise provided in this Plan, the Debtor may, but shall not be required to, setoff against or recoup from any Claim or Claims of any nature whatsoever that the Estate may have against the Creditor holding such Claim(s) and such holder shall have the right to object to any such setoff or recoupment made by the Debtor, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such Claim.

6.9    No Interest. Unless otherwise specifically provided for in the Plan (including with respect to the Allowed amount of any Claims hereunder), required under applicable bankruptcy law, or agreed to by the Debtor, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Order for Relief Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final Distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

6.10    Plan Amendment. The Debtor reserves the right to amend the Plan in accordance with the terms hereof.

## ARTICLE VII
Provisions for Resolving and Treating Disputed Claims

7.1    Disputed Claim Objection Deadline. On and after the Effective Date, the Debtor may continue to attempt to resolve consensually any Disputed Claim and the Debtor shall have the right, but not the obligation, to object to the allowance of any Claim and may file with the Bankruptcy Court any other appropriate motion or adversary proceeding with respect thereto. All such objections may be litigated to Final Order. The Debtor shall retain the rights and defenses of the Estate with respect to any Claim, subject to the provisions of this Plan.

Objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made no later than ninety (90) days after the Effective Date.

7.2    Disputed Claims Settlement. Notwithstanding any requirements that may be

imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date and subject to the provisions of this Plan, the Debtor shall have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Bankruptcy Court.

7.3    Distributions on Account of Disputed Claims. A Disputed Claim, to the extent it becomes an Allowed Claim for Distribution purposes, shall receive from the Disputed Claims Reserve any amounts held in the Disputed Claims Reserve attributable to the Allowed amount of such Claim, as set forth in the Plan.

7.4    No Distribution Pending Allowance; Subsequent Distribution. Notwithstanding any other provision of the Plan, no Cash shall be distributed under the Plan on account of any Disputed Claim unless and until such Claim is Allowed in accordance with the Plan. Upon a determination that such Disputed Claim is an Allowed Claim for purposes of the Plan, the Claim as Allowed shall be paid from the Disputed Claims Reserve in accordance with the terms and conditions of the Plan, but the amount distributed shall not exceed the amount in the Disputed Claim Reserve reserved on account of such Claim.

7.5    Excess Funds. Promptly after all Disputed Claims, as to which Cash has been retained therefor in the Disputed Claims Reserve, have become Allowed Claims or have otherwise been resolved by Final Order of the Bankruptcy Court, and all applicable Distributions have been made from the Disputed Claims Reserve, any amounts remaining in the Disputed Claims Reserve shall be further distributed by the Debtor in accordance with the Plan.

7.6    Estimation. The Debtor may request estimation or limitation of any Claim pursuant to Bankruptcy Code section 502(c) regardless of whether that Claim was previously objected to or whether the Bankruptcy Court has ruled on any such objection; provided, however, that the Bankruptcy Court will determine (a) whether such Claims are subject to estimation pursuant to Bankruptcy Code section 502(c) and (b) the timing and procedures for such estimation proceedings, if any. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Plan or the Bankruptcy Court.

7.8    Remedies Not Exclusive. All of the Claims objection and estimation procedures set forth in this Article VII are cumulative and not exclusive of one another.

## ARTICLE VIII
Executory Contracts and Unexpired Leases

8.1     Assumption or Rejection of Executory Contracts. Effective on the Confirmation Date, all Executory Contracts, to the extent such exist, are hereby specifically deemed rejected, except for any Executory Contract (a) that has been specifically assumed, or assumed and assigned, by the Debtor on or before the Confirmation Date with the approval of the Bankruptcy Court, (b) in respect of which a motion for assumption or assumption and assignment has been filed with the Bankruptcy Court on or before the Confirmation Date, or (c) that is specifically designated as a contract to be assumed on a schedule to be included as part of the Plan Supplement.

8.2     Approval of Assumption or Rejection of Executory Contracts. Entry of the Confirmation Order, but subject to the occurrence of the Effective Date, shall constitute (a) the approval pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code of the assumption, or assumption and assignment, of the Executory Contracts assumed, or assumed and assigned, in accordance with Section 8.1 of the Plan, and (b) the approval pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code of the rejection of the Executory Contracts rejected in accordance with Section 8.1 of the Plan.

8.3     Bar Date for Filing. Proofs of Claim Relating to Executory Contracts Rejected Pursuant to the Plan. Claims against the Debtor arising out of the rejection of Executory Contracts pursuant to the Plan must be filed with the Court no later than thirty (30) days after the later of service of (a) notice of entry of an order approving the rejection of such Executory Contract which Order may be the Confirmation Order, and (b) notice of occurrence of the Effective Date. Any such Claims not filed within such time shall be forever barred from assertion against the Estate, and any and all of the Assets of the Estate.

## ARTICLE IX
Effect of Confirmation

9.1     Term of Bankruptcy Injunction or Stays. Subject to the rights of the holders of Allowed Secured Claims under Section 4.1 of the Plan, unless otherwise provided in the Confirmation Order, any injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Plan has been fully performed.

9.2     Releases by Holders of Claims. Except for the right to enforce this Plan, or as otherwise provided herein, each holder of a Claim against the Debtor or the Estate shall be deemed to forever release, waive and discharge the Released Parties of and from any and all Claims, demands, Causes of Action and the like, existing as of the Effective Date or thereafter arising from any act, omission, event, or other occurrence that occurred on or prior to the Effective Date, whether direct or derivative, liquidated or unliquidated, fixed or

16

contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, at law, in equity or otherwise; provided, however, such release, waiver and discharge shall not operate as a release, waiver or discharge of any Released Party in respect of any express contractual obligation of any such party effective from and after the Effective Date; provided, further, that notwithstanding the foregoing or any other provision of the Plan, nothing in the Plan, any Plan Supplement, or any order confirming the Plan shall affect any Causes of Action, Claims, or counter-Claims that may be asserted by the Debtor in connection with an objection to a Claim that has not been Allowed, in each case as determined by the Bankruptcy Court.

9.3     Injunctions. In addition to the releases provided for in the above Section 9.2 of the Plan, the following provisions shall apply and shall be fully set forth in the Confirmation Order:

        (a)     Injunctions Against Interference with Consummation or Implementation of Plan. Upon the Effective Date all Persons shall be enjoined from commencing or continuing any judicial or administrative proceeding, employing any process, or taking any action whatsoever against estate, the Debtor or any Released Parties with the intent or effect of interfering with the consummation and implementation of this Plan.

        (b)     Injunction Against Prosecution of Causes of Action. Except as otherwise specifically provided for by this Plan, as of the Effective Date, all Persons shall be enjoined from taking any of the following actions in respect to any released Claims as set forth in Section 9.2:

                (i)     the commencement or continuation of any action or proceedings;
                (ii)    the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order;

                (iii)   the creation, perfection or enforcement of any encumbrance of any kind; and/or

                (iv)    the assertion of any right of setoff, subrogation or recoupment of any kind against any obligation due from any such entity.

9.4     Exculpation. Except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim, or obligation, Cause of Action or liability for any Exculpated Claim, and shall be entitled to rely reasonably on the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. Each Exculpated Party and their respective affiliates, agents, directors, members, managers, officers, officials, employees, advisors and attorneys have, and upon the Effective Date shall be deemed to

17

have, participated in the promulgation of this Plan and in good faith and in compliance with the applicable provisions of the Bankruptcy Code and applicable non-bankruptcy law and shall not be liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or Distributions made pursuant to this Plan. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability satisfied, enjoined or subject to exculpation pursuant to this Article IX ; provided, however, that nothing in the Plan or the Confirmation Order shall, or shall be deemed to, release or exculpate the Exculpated Parties and representatives with respect to, its obligations or covenants claims and liabilities arising from bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Upon the Confirmation Date, Creditors will be unable to pursue any Claims that are satisfied, enjoined or subject to exculpation under the Plan, but Creditors may pursue Claims that may arise in the future, or pursuant to the Plan or Confirmation Order.

9.5    Binding Effect. Subject to the earlier of the Confirmation Order becoming a Final Order or substantial consummation of the Plan, on and after the Confirmation Date, the Plan shall be binding upon and inure to the benefit the Debtor and the holders of Claims and their respective successors and assigns, whether or not the Claim of such holder is Impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a Distribution under the Plan.

9.6    Discharge. The Debtor shall not be entitled to a discharge of any debt unless the Bankruptcy Court approves a motion of the Debtor in which the Debtor certifies that (a) the Debtor has complied with all of the terms and conditions of this Plan and Confirmation Order, and (b) all Distributions required to be made under this Plan are made, including payments made to holders of Allowed Claims. No discharge granted to the Debtor shall be inconsistent with the terms of any Order of the Court determining that any debt is non-dischargeable, or with the provisions of sections 1141(d)(2) or (d)(6) of the Bankruptcy Code.

## ARTICLE X
### Conditions to Confirmation

10.1    Conditions Precedent to Confirmation. The following are conditions precedent to the occurrence of the Confirmation Date:

(a)    The Financing shall have closed.

(b)    The Debtor shall have filed a certification prior to the Confirmation Hearing, attesting that the Plan Distribution Funds on deposit in the Plan Distribution Account are sufficient to fund the distributions pursuant to the terms of the Plan.

18

(c)     The Bankruptcy Court shall have approved by Final Order a settlement of the Claims (i) of Dean Ziehl, as Litigation Trustee of the SFX Litigation Trust, the successor-in-interest to SFX Entertainment, Inc. and its affiliated debtors, (ii) asserted in the action styled *Guevoura Fund Ltd., On Behalf of Itself and All Others Similarly Situated v. Robert F.X. Sillerman, et al.*; and (iii) asserted in the action styled *Altimeo Investissement v. Sillerman, Robert F.X.*

(d)     The Plan shall not have been materially amended, altered or modified, unless such material amendment, alteration or modification has been made in accordance with the terms of this Plan.

(e)     The Confirmation Order is in form and substance reasonably satisfactory to the Debtor.

10.2   Conditions Precedent to Occurrence of Effective Date. The following are conditions precedent to the occurrence of the Effective Date of the Plan:

(a)     The Bankruptcy Court shall have approved the Confirmation Order by Final Order.

(b)     The Bankruptcy Court shall have entered a Final Order (contemplated to be part of the Confirmation Order) authorizing the Debtor to take all actions necessary or appropriate to implement the Plan and the other transactions contemplated by the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan.

(c)     No stay of the Confirmation Order shall then be in effect, unless the Plan shall have been substantially consummated before entry of any stay.

(d)     The Plan, and any Exhibits and Schedules thereto, shall not have been materially amended, altered or modified, unless such material amendment, alteration or modification has been made in accordance with the Plan.

(e)     The Effective Date shall occur no later than sixty (60) calendar days after the Bankruptcy Court approves the Confirmation Order by Final Order.

## ARTICLE XI
### Certain Post Confirmation Matters

11.1   Closing of the Chapter 11 Case. After each Disputed Claim filed against the Debtor has become an Allowed Claim or a disallowed Claim, and upon the Distribution to all holders of Allowed Claims in full as required under the Plan, the Debtor shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

11.2    Reservation and Preservation of Causes of Action.

       (a)    On the Effective Date, any and all Causes of Action including, without limitation, claims for turnover of property, breach of fiduciary duty, malpractice, or alter ego liability, shall be expressly preserved for the benefit of the Debtor; **provided, however,** that any Avoidance Actions shall be deemed forever released, waived and discharged by the Estate. Until such time as all Allowed Claims have been irrevocably paid in full as set forth in the Plan, all Causes of Action, not otherwise released, may be prosecuted solely and exclusively by the Debtor for the benefit of holders of Allowed Claims.

       (b)    The Debtor retains standing to bring and prosecute any Cause of Action not released hereunder, as determined by the Debtor in the Debtor's discretion. Such power shall include the power to sue on behalf of the Debtor and the Estate, to collect any amounts due on any Cause of Action, and the power to compromise any claim described in such Cause of Action. Except as otherwise provided in the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtor shall retain and may in the Debtor's discretion and business judgment (except as otherwise limited by the Plan) enforce Causes of Action, Claims and defenses and counterclaims to all Claims asserted against the Debtor and the Estate, including but not limited to, setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code.

## ARTICLE XII
### Retention of Jurisdiction

12.1    Jurisdiction of Bankruptcy Court. The Bankruptcy Court shall retain jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan pursuant to, and for the purposes of sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

       (a)    To hear and enforce any of the injunctive provisions of this Plan.

       (b)    To hear and determine any and all adversary proceedings, applications and contested matters relating to the Chapter 11 Case and this Plan, even if filed after confirmation of the Plan.

       (c)    To hear and determine any objections to Claims, including Administrative Expense Claims and Professional Fee Claims of the Bankruptcy Code, and all disputes concerning the classification and allowance of any Claim and the reexamination of Claims that have been allowed for the purposes of voting.

       (d)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated.

(e)     To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code.

(f)     To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order.

(g)     To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or Confirmation Order.

(h)     To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code.

(i)     To hear and determine any requests to sell any Assets as to which Bankruptcy Court approval is required under the terms of the Plan.

(j)     To hear and determine all actions pursuant to sections 105, 502, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, any collection matters related thereto, and settlements thereof, and any other Causes of Action properly within the jurisdiction of the Bankruptcy Court.

(k)     To hear and determine any disputes concerning quarterly fees owing or claimed to be owing to the Office of the United States Trustee under section 1930(a)(6) of title 28 of the United States Code.

(l)     To enter a final decree closing the Chapter 11 Case.

(m)     To address, hear and determine any other issues or disputes that arise under the Plan.

## ARTICLE XIII
### Miscellaneous Provisions

13.1    Exemption from Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer or exchange of notes or issuance of debt or equity securities under this Plan, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, registration, licensing, sales or similar tax.

13.2    Successors and Assigns. The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

21

13.3    Entire Agreement. The Plan constitutes the entire agreement and understanding among the Debtors and their creditors relating to payment and treatment of all Claims in bankruptcy.

13.4    Amendment or Modification of the Plan. Alterations, amendments or modifications of or to the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that (a) the Plan, as altered, amended or modified satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and (b) the Debtor shall have complied with section 1125 of the Bankruptcy Code. The Plan may be altered, amended or modified by the Debtor at any time after the Confirmation Date and before substantial consummation, provided that (a) the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, (b) and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Bankruptcy Code. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder or any Distribution to be received in connection with any settlement pertaining to such holder. Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan or the Disclosure Statement without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims.

13.5    Severability. In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan and shall not require the re-solicitation of any acceptance or rejection of the Plan unless otherwise ordered by the Bankruptcy Court.

13.6    Revocation or Withdrawal of the Plan. The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, the Plan shall be deemed withdrawn and shall be deemed null and void.

13.7    Notices. All notices, requests and demands to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or made by electronic means with confirmation of receipt.

To the Debtor:

c/o Sanford P. Rosen, Esq.
Rosen & Associates, P.C.
747 Third Avenue
New York, NY 10017-2803
E-mail: srosen@rosenpc.com

13.8    Governing Law. Except to the extent the Bankruptcy Code, Bankruptcy Rules or
other federal law is applicable, or to the extent any exhibit to the Plan provides otherwise,
the rights and obligations arising under this Plan shall be governed by, and construed and
enforced in accordance with, the laws of the State of New York, without giving effect to the
principles of conflicts of law of such jurisdiction.

13.9    Withholding and Reporting Requirements. In connection with the consummation of
the Plan, the Debtor shall comply with all withholding and reporting requirements imposed
by any federal, state, local or foreign taxing authority in connection with all Distributions
made hereunder.

13.10    Headings. Headings are used in the Plan for convenience and reference only, and
shall not constitute a part of the Plan for any other purpose.

13.11    Schedules. All exhibits and schedules to the Plan are incorporated into and are a part
of this Plan as if set forth in full herein.

13.12    Filing of Additional Documents. On or before confirmation of the Plan, the Debtor
shall file with the Bankruptcy Court such agreements and other documents, if any, as may
be necessary or appropriate to effectuate and further evidence the terms and conditions of
this Plan.

13.13    Conflict. To the extent this Plan is inconsistent with the Disclosure Statement the
provisions of the Plan shall be controlling. In the event there is an inconsistency between the
Plan and the Confirmation Order, the Confirmation Order controls.

13.14    Time. In computing any period of time prescribed or allowed by the Plan, unless
otherwise set forth herein or determined by the Bankruptcy Court, the provisions of
Bankruptcy Rule 9006 shall apply.

13.15    Effect of Withdrawal, Revocation, or Non-Consummation. If the Debtor revokes or
withdraws this Plan prior to the earlier of the Effective Date or substantial consummation of
the Plan or if neither of the foregoing occurs, the Plan, any settlement or compromise
embodied in the Plan or any exculpation, release, or indemnification provided for in the
Plan, shall be null and void. In such event, nothing contained in the Plan, and no acts taken
in preparation for consummation of the Plan shall be deemed to constitute a waiver or

release of any Claim(s) or Causes of Action by or against the Debtor, the holders of Claims against the Debtor, or any other Person or Entity in any further proceeding involving the Debtor, or to constitute an admission of any sort by the Debtor, any Claim holder, or any Person or Entity.

Dated: October 31, 2018

**Robert Francis Xavier Sillerman aka Robert F.X. Sillerman, aka Robert F. Sillerman, aka Robert X. Sillerman**

*Debtor and Debtor in Possession*

/s/ Robert F.X. Sillerman
    Robert F.X. Sillerman

**Rosen & Associates, P.C.**
*Counsel to the Debtor*

By: /s/ Sanford P. Rosen
    Sanford P. Rosen

747 Third Avenue
New York, NY 10017-2803
(212) 223-1100