UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GUEVOURA FUND LTD., on behalf of itself and all
others similarly situated,

      Plaintiff-Applicant,

-against-

ROBERT FRANCIS XAVIER SILLERMAN,

      Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: ___12/3/18___

No. 18 Civ. 9784 (CM)

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO WITHDRAW THE
REFERENCE**

McMahon, C.J.:

      Plaintiff Guevoura Fund Ltd. ("Guevoura"), on behalf of itself and all others similarly

situated, has moved under 28 U.S.C. § 157(d) to withdraw the reference of an adversary

proceeding brought by Plaintiff in the United States Bankruptcy Court for the Southern District

of New York. The adversary proceeding is premised on the same underlying facts as a putative

securities class action that is currently stayed before this Court while bankruptcy proceedings

against Defendant Robert Francis Xavier Sillerman ("Sillerman") are ongoing. *See Guevoura*

*Fund Ltd., et al. v. Sillerman, et al.*, No, 15 Civ. 7192 (hereinafter referred to as the "Securities

Litigation"). Sillerman opposes Guevoura's motion.

      For the reasons stated below, Guevoura's motion is granted.

## I.    Factual and Procedural Background

There are several proceedings currently involving Guevoura and Sillerman that are implicated by the instant motion to withdraw the reference.[1]

On December 23, 2015, Guevoura, on behalf of itself and similarly situated investors, filed an amended complaint against Sillerman, SFX Entertainment, Inc. ("SFX" or "the Company"), and three of SFX's directors (collectively, the "Securities Litigation Defendants"), alleging that they used sham offers to manipulate SFX's share price and made false or misleading statements in connection therewith, in violation of Sections 10(b) and 20(a) of the Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. (15 Civ. 7192 Dkt. No. 61.) The gravamen of Guevoura's claims is that Sillerman, who was SFX's founder, chief executive officer, and largest shareholder, allegedly made repeated fraudulent offers to purchase SFX at a premium to the Company's then-current publicly traded share price, without any intention of consummating a transaction, for the sole purpose of keeping SFX afloat long enough for it to renegotiate its debt obligations and report improved financial results.[2] (Id.)

The Securities Litigation Defendants filed three motions to dismiss the lawsuit. (15 Civ. 7192 Dkt. Nos. 63, 78, 78.) While those motions were pending, SFX filed before this Court a "Suggestion of Bankruptcy," giving notice that it had filed for protection under Chapter 11 of the Bankruptcy Code and that, therefore, the Securities Litigation was automatically stayed as to the Company, pursuant to 11 U.S.C. § 362(a). (15 Civ. 7192 Dkt. No. 88.) The case continued

---

[1]    Unless otherwise indicated, "Dkt. No. __" refers to the instant docket, No. 18 Civ. 9784. References to Chapter 11 bankruptcy proceedings involving Sillerman are designated as "17-13633 Dkt. No __." References to Guevoura's adversary proceeding against Sillerman are designated as "18-01572 Dkt. No. __." References to the Securities Litigation are designated as "15 Civ. 7192 Dkt. No. __."

[2]    The Court presumes the parties' familiarity with the details of Guevoura's allegations, which were recited more fully in the Court's memorandum decision and order denying defendants' motions to dismiss the Securities Litigation. (See 15 Civ. 7192 Dkt. No. 104.)

against the remaining Securities Litigation Defendants, and, on September 12, 2016, the Court

denied the motions to dismiss.  (15 Civ. 7192 Dkt. No. 104.)

On December 26, 2017 – just weeks after the parties represented to this Court in a Joint

Status Letter that they "ha[d] made significant progress toward a negotiated resolution" of the

Securities Litigation (115 Civ. 7192 Dkt. No. 122) – certain creditors of Sillerman filed an

involuntary Chapter 7 bankruptcy petition against him.  (17-13633 Dkt. No. 1.)  Sillerman then

moved to convert the involuntary Chapter 7 petition to a voluntary case under Chapter 11, which

the bankruptcy court granted.  (17-13633 Dkt. Nos. 6, 26.)  In light of these new developments,

the Securities Litigation was automatically stayed as to Sillerman, pursuant to 11 U.S.C. §

362(a), and the Court stayed the matter with respect to the remaining Securities Litigation

Defendants so as to permit the parties "to work toward a settlement plan in coordination with the

bankruptcy proceedings."  (15 Civ. 7192 Dkt. No. 131.)

On June 19, 2018, Guevoura filed an adversary proceeding in the bankruptcy court,

seeking a determination that Sillerman's alleged violations of Sections 10(b) and 20(a) of the

Exchange Act give rise to a non-dischargeable debt under 11 U.S.C. § 523(a).  (18-01572 Dkt

No. 1.)  The claims in the adversary proceeding require resolution of identical legal issues and

are based entirely on the same set of facts as the Securities Litigation; in fact, the language used

in the adversary complaint to describe the factual allegations appears to have been copied

verbatim from the descriptions used in the Securities Litigation complaint.  (*Compare* 15 Civ.

7192 Dkt. No. 61 *with* 18-01572 Dkt. No. 1.)

By motion dated October 24, 2018, Guevoura now seeks to withdraw the reference of the

adversary proceeding to the bankruptcy court, pursuant to 28 U.S.C. § 157(d) and Fed. R. Bankr.

P. 5011.

## II.   Discussion

Although district courts have original jurisdiction over bankruptcy cases, *see* 28 U.S.C. §

1334(a), each district court may refer "any or all" bankruptcy proceedings "to the bankruptcy

judges for the district." 28 U.S.C. § 157(a).  The Southern District of New York does just that:

by way of standing order, "any or all proceedings arising under title 11 or arising in or related to

a case under title 11" that are filed in this District are automatically referred to the U.S.

Bankruptcy Court for the Southern District of New York. *See Amended Standing Order of*

*Reference Re: Title 11*, No. 12 Misc. 32 (LAP) (S.D.N.Y. Feb. 1, 2012), *available at*

www.nysd.uscourts.gov/rules/StandingOrder_OrderReference_12mc32.pdf.

Section 157(d), however, provides for withdrawal of the reference in two instances:

> The district court may withdraw, in whole or in part, any case or proceeding referred
> under this section, on its own motion or on timely motion of any party, for cause shown.
> The district court shall, on timely motion of a party, so withdraw a proceeding if the court
> determines that resolution of the proceeding requires consideration of both title 11 and
> other laws of the United States regulating organizations or activities affecting interstate
> commerce.

28 U.S.C. 157(d).  The first clause of the provision provides for permissive withdrawal, or

withdrawal for cause, while the second sentence provides for mandatory withdrawal.

Guevoura argues that withdrawal is warranted under both the mandatory and permissive

clauses of Section 157(d).  Sillerman disagrees and, as a threshold matter, argues that

Guevoura's motion to withdraw the references is untimely under Section 157(d).

While Sillerman is correct that the standard for mandatory withdrawal has not been met,

his other arguments are not persuasive.

### a.   The Withdrawal Motion is Not Untimely

Courts in this Circuit have defined a "timely motion," within the meaning of Section

157(d), to mean "as soon as possible after the moving party has notice of the grounds for

withdrawing." *In re Madison Bentley Assocs., LLC*, 474 B.R. 430, 436 (S.D.N.Y. 2012)

(quoting *In re The VWE Grp., Inc.*, 359 B.R. 441, 446 (S.D.N.Y. 2007)); *see also M. Fabrikant*

*& Sons, Inc. v. Long's Jewelers Ltd.*, No. 08 Civ. 1982, 2008 WL 2596322, at *2 (S.D.N.Y. June

26, 2008) (quotation marks and citation omitted).

While there is no specific time limit for applications to withdraw the reference, *In re N.Y.*

*Trap Rock Corp.*, 158 B.R. 574, 577 (S.D.N.Y. 1993), most cases in this District in which

motions under 28 U.S.C. § 157(d) were held untimely involved significantly longer delays than

the eighteen week period that elapsed here between the filing of the adversary proceeding and

the present motion.  In *Connolly v. Bidermann Indust. U.S.A., Inc.*, No. 95 Civ. 1791, 1996 WL

325575, at *3 (S.D.N.Y. June 13, 1996), the court found untimely a motion to withdraw the

reference that was filed after an eight month delay.  In *Drew v. WorldCom, Inc.*, No. 06 Civ.

3407 (JGK), 2006 WL 2129309, at *2 (S.D.N.Y. July 26, 2006), the motion to withdraw the

reference was deemed untimely where over eight months had elapsed between debtor's objection

to a proof of claim and the claimant's motion to withdraw the reference.  The court in *In re FMI*

*Forwarding Co., Inc.*, No. 00 B 41815 (CB), 2004 WL 1348956, at *6 (S.D.N.Y. June 16, 2004)

found the motion to withdraw untimely when made eighteen months after the movant became

aware of grounds for the motion.  And in *In re Rickel & Associates, Inc.*, 2003 WL 23021972, at

*2 (S.D.N.Y. Dec 24, 2003), the motion was deemed untimely when it was filed thirty-one

months after commencement of adversary proceeding.

This case bears a striking resemblance to *VWE*.  In that case, this Court determined that a

motion to withdraw the reference was timely where it was brought four and half months after an

adversary proceeding complaint was filed – a period that, as noted, is identical to the case at bar.

359 B.R. at 446–47.  There, as here, the movants filed their motion to withdraw the reference at a

preliminary stage of the relevant adversary proceeding, and the defendants to the adversary proceeding had yet to file an answer to the adversary complaint. *Id.* at 446. Despite the fact that some activity in the adversary proceeding had occurred – the defendants in *VWE* had filed a motion to dismiss the adversary complaint, though the bankruptcy court had not yet ruled on that motion – the Court granted the motion to withdraw, distinguishing the case from others involving clear indications of tactical delay and forum shopping after the bankruptcy judge made intermittent findings that were adverse to the moving party. *Id.* at 447.

Here, the bankruptcy court has expended virtually no judicial resources in the adversary proceeding, as no motions have been filed. There is no indication that Guevoura is seeking to forum shop, nor can it be accused of evading an adverse finding below, because, of course, none has been issued. The Court also notes that, in considering whether a movant failed to timely file a motion to withdraw the reference, "a waiver of important rights should only be found where it is fully knowing." *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 472 (S.D.N.Y. 2011); *accord In re Madison Bentley*, 474 B.R. at 437. The Court is not persuaded that Guevoura knowingly waived its right to have its securities fraud claims against Sillerman litigated in district court before a jury by bringing an untimely motion. *See* 28 U.S.C. § 157(e).

The Court therefore finds that Guevoura's motion was timely filed.

b.   Mandatory Withdrawal is Not Warranted

Both parties agree on the standard for mandatory withdrawal; they disagree, however, on its application.

Mandatory withdrawal is to be applied "narrowly" and only in circumstances "where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for

the resolution of the proceeding." *In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 995 (2d Cir.

1990); *see also Sec. Inv'r Prot. Corp. v. Bernard L Madoff Inv. Sec. LLC*, 486 B.R. 579, 582

(S.D.N.Y. 2013). Courts have clarified the "substantial and material consideration" standard to

mean that, "absent the withdrawal, the bankruptcy judge would be obligated to engage in

significant interpretation, as opposed to simple application, of federal laws apart from the

bankruptcy statutes." *Picard v. HSBC Bank PLC*, 450 B.R. 406, 409 (S.D.N.Y. 2011) (quotation

marks and citations omitted).

Having recited the applicable legal standard for mandatory withdrawal, the Court

confesses that this standard is less than clear. Indeed, the line of demarcation between

"substantial interpretation" and "simple application" is elusive – certainly for a district court,

which, as a court of first instance, spends the bulk of its days simultaneously engaged in

interpreting and applying the law. In this instance, however, the Court is persuaded that

mandatory withdrawal is not warranted.

Guevoura avers that the continuation of the adversary proceeding would require the

bankruptcy court to engage in a substantial interpretation, and not merely a straightforward

application, of the securities laws. (*See* Dkt. Nos. 1 at 14–15 (brief pages 10–1), 12 at 4–8.) In

so arguing, Guevoura appears to conflate the degree of complexity associated with the securities

laws, as a general matter, with the degree of difficulty associated with their particular application

to this case. There is nothing innately unusual about the work that a judge – be it this Court or

the bankruptcy court – would need to do to adjudicate this matter. Rather, Guevoura's securities

fraud allegations call for a "run-of-the-mill application of the law," *Light Energy Installers, LLC

v. Kyocera Int'l, Inc.*, No. 1:16-MC-36 (MAD/CFH), 2018 WL 4298635, at *3 (N.D.N.Y. Sept.

10, 2018), which, as the law contemplates, bankruptcy courts are "fully competent" to undertake.

*Id.* (citing *In re Kummerfeld*, 444 B.R. 28, 43-50 (Bankr. S.D.N.Y. 2011) (analyzing a multi-element securities claim).

Indeed, in its moving papers, Guevoura unwittingly concedes that the issues implicated by Guevoura's securities fraud allegations entail a straightforward application of the law. Guevoura writes that, "[I]n order to determine whether Sillerman engaged in manipulative acts, the [court] will have to determine whether Sillerman's securities transactions sent a false pricing signal to the market due to his engagement practices that artificially affected market activity, specifically, by deceiving investors as to how other market participants have valued a security." (Dkt. No. 12 at 6.) Contrary to what Guevoura contends, this is a statement that explicitly calls for the straightforward application of one of the elements of Section 10(b). It does not call for construing the language of a particular statute or confronting a novel or seldom litigated legal issue.

In short, the Court is not persuaded that mandatory withdrawal is warranted.

      c.   Permissive Withdrawal is Appropriate, as Guevoura Has Established Cause

As noted, permissive withdrawal is warranted "for cause shown." 28 U.S.C. § 157(d). The Second Circuit has instructed that, to determine whether such "cause" exists, courts should first evaluate whether the claim is core or non-core," and then "weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping and other related factors." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993). As the movant, Guevoura bears the burden of showing that permissive withdrawal is warranted. *In re Madison Bentley Assocs., LLC*, No. 16 Civ. 1083 (GBD), 2016 WL 5793990, at *2 (S.D.N.Y. Sept. 27, 2016).

As noted, under the *Orion* framework, inquiry into whether a claim is core or non-core should be evaluated in the first instance.

This inquiry has taken on renewed meaning in the wake of the Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462 (2011). Before *Stern*, the "core" versus "non-core" distinction determined whether the bankruptcy court had the adjudicatory authority over a claim. If the matter qualified as a "core," *i.e.*, one that "aris[es] in" or "under" Title 11, then the bankruptcy court was empowered to enter a final judgment on the claim. 28 U.S.C. § 137(b)(1). If the claim was "non-core," then a bankruptcy court would "submit proposed findings of fact and conclusions of law to the district court," but only the district court could enter a final order or judgment upon *de novo* review of the bankruptcy court's report. 28 U.S.C. § 157(c)(1).

In *Stern*, the Supreme Court recognized that even if a claim qualifies as core – thus granting the bankruptcy court the *statutory* authority to enter a final judgment in the matter – the bankruptcy court must also possess the *constitutional* adjudicatory authority to do so. 564 U.S. at 469. Absent the parties' consent, bankruptcy courts have the constitutional adjudicatory authority to enter final orders in core proceedings only where the claims "stem[] from the bankruptcy itself or necessarily would be resolved in the claims allowance process." *Id.* at 499.

Both parties stipulate that the adversary proceeding is a core proceeding. (Dkt. Nos. 1 at 16 (page 12 of brief) & 9 at 9–10.) The Court agrees. A claim for a non-dischargeable debt is a statutorily-prescribed core proceeding under 28 U.S.C. § 157(b)(2)(I). Moreover, the bankruptcy court has the constitutional adjudicatory authority to enter a final order in the adversary proceeding, because it "stems from the bankruptcy process itself." *Stern*, 54 U.S. at 499.

That the adversary proceeding is a core proceeding is not dispositive under *Orion*. *See, e.g.*, *In re Madison Bentley*, 2016 WL 5793990, at *3; *In re Motors Liquidation Co.*, 538 B.R.

9

656, 663 (S.D.N.Y. 2015); *In re Parmalat Finanziaria S.p.A.*, 320 B.R. 46 (S.D.N.Y. 2005); *In re Houbigant, Inc.*, 185 B.R. 680, 686 (S.D.N.Y.1995); *Madoff Inv. Sec. LLC*, 486 B.R. at 584; *Mishkin v. Ageloff*, 220 B.R. 784, 800 (S.D. N.Y. 1998); *In re Formica Corp.*, 305 B.R. 147, 150–51 (S.D. N.Y. 2004). On the contrary, a close reading of *Orion* makes clear that the Second Circuit instructed courts to begin with undertaking a core/non-core analysis precisely because it believed that doing so would animate the remaining factors to be considered:

> [T]he fact that a bankruptcy court's determination on non-core matters is subject to *de novo* review by the district court *could* lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court. Conversely, hearing core matters in a district court *could* be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues. Thus once a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors.

*Orion*, 4 F.3d at 1101 (emphasis added).

The considerations suggested by the Court in *Orion* simply are not present here.

It is this Court – not the bankruptcy court – that is more familiar with the facts and issues of Guevoura's securities fraud allegations, given the relative postures of the two cases. This Court already has assessed the sufficiency of Guevara's security fraud allegations in connection with motions to dismiss, whereas the adversary proceeding has not yet progressed beyond the filing of a complaint. Failing to withdraw the reference would require the parties to return to the proverbial starting line.

Further inefficiencies abound were the Court not to withdraw the reference. In addition to Sillerman, the Securities Litigation involves three individual defendants. Those three individuals are not parties to the adversary proceeding, nor could they be. Thus, if both the Securities Litigation and adversary proceeding were to proceed on separate tracks, the same

10

factual matters and legal issues would be litigated twice, with certain individuals missing from each proceeding.  Under these circumstances, "[i]t would be inefficient to allow [the adversary proceedings] to go forward, knowing that they will have to be substantially repeated[,]" *Dev. Specialists*, 462 B.R. at 471, and could result in "inconsistent adjudications." *Gisinger v. Patriach*, No. 16 Civ. 1564 (ER), 2016 WL 6083981, at *5 (S.D.N.Y. Oct. 18, 2016).

Opting not to withdraw the reference would also impose unnecessary costs on the parties – and come at the expense of putative class members in the Securities Litigation.  As Sillerman and the three other individual defendants in the Securities Litigation have represented to the Court:

> Pivotally, although defendants are covered by directors' and officers' insurance policies applicable to Class Plaintiff's (and the other parties') claims, the amount of that coverage is finite, and covers, *inter alia*, Defendant's defense costs. Indeed, the damages claimed by plaintiff, the state court plaintiffs, and the litigation trustee each far exceed that coverage. Since that insurance coverage – which we believe is, as a practical matter, the source of any meaningful potential recovery by the three sets of plaintiffs – is a wasting asset, the parties wish a little more time to attempt to resolve the litigations before the policies are further depleted.

(15 Civ. 7192 Dkt. No. 113.)  Given the parties' insurance arrangement, litigating Guevoura's securities fraud allegations twice poses a substantial risk that the source of recovery available to potential class plaintiffs in the Securities Litigation would be depleted, leaving them with little recourse for their claims.  Litigation is costly enough.  There is no reason to unnecessarily duplicate it.

Withdrawal would not result in undue delay.  In fact, it would expedite the bankruptcy process.  Sillerman's proposed plan of reorganization lists as a condition precedent to confirmation the resolution of the Securities Litigation.  (17-13633 Dkt. No. 132 ¶ 10.1(c).)  Withdrawal would permit litigation to resume at a more advanced stage, with all parties present, and, perhaps, would facilitate renewed settlement discussions.

The final factors to be considered – ensuring uniformity in bankruptcy administration and discouraging forum shopping – are not substantially implicated here, but both favor withdrawal as well. Guevoura's securities fraud allegations do not require an analysis of bankruptcy law, and thus will not adversely impact the uniformity of bankruptcy administration. *Scott v. AIG Prop. Cas. Co.*, No. 17 Civ. 1052 (GHW), 2017 WL 1380607, at \*4 (S.D.N.Y. Apr. 17, 2017). Guevoura appears motivated not by a desire to forum shop, but by an effort to "reduce the time and expense of litigation." *In re Lyondell Chem. Co.*, 467 B.R. 712, 725 (S.D.N.Y. 2012).

Having weighed the *Orion* factors, the Court concludes that withdrawal of the bankruptcy reference is appropriate in this case.

## CONCLUSION

Based on the foregoing, Guevoura's motion to withdraw the reference is GRANTED. The Clerk of Court is respectfully directed to terminate the open motion at Dkt. No. 1. Oral argument on this matter, which is currently scheduled for January 25, 2019 at 11:30 AM, is canceled. Instead, we will hold a scheduling conference on December 20, 2018 at 11:00 A.M. in order to get the motion onto an expedited footing.

Dated: December 3, 2018

_____

Chief Judge

TO ALL PARTIES BY ECF