Thomas R. Slome, Esq.
Jil Mazer-Marino, Esq.
Elizabeth Aboulafia, Esq.
CULLEN AND DYKMAN LLP
100 Quentin Roosevelt Blvd.
Garden City, New York 11530
Telephone: (516) 357-3700
tslome@cullenanddykman.com
jmazermarino@cullenanddykman.com
eaboulafia@cullenanddykman.com

*Counsel to the Official Committee*
*of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

Robert Francis Xavier Sillerman,
aka Robert F.X. Sillerman,
aka Robert F. Sillerman,
aka Robert X. Sillerman,

                    Debtor.
-------------------------------------------------------------x

Chapter 11

Case No. 17-13633 (MKV)

**CHAPTER 11 PLAN OF LIQUIDATION FOR THE DEBTOR PROPOSED
BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

CULLEN AND DYKMAN LLP
100 Quentin Roosevelt Blvd.
Garden City, New York 11530
Telephone: (516) 357-3700
Thomas R. Slome, Esq.
Jil Mazer-Marino, Esq.
Elizabeth Aboulafia, Esq.
tslome@cullenanddykman.com
jmazermarino@cullenanddykman.com
eaboulafia@cullenanddykman.com

*Counsel for The Official Committee of*
*Unsecured Creditors*

Dated:  August 30, 2019
           Garden City, New York

The Official Committee of Unsecured Creditors for the chapter 11 case of Robert F.X. Sillerman, the above-captioned debtor and debtor-in-possession proposes the following chapter 11 plan of liquidation pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in <u>Section 1.A.</u> below.

## SECTION 1. DEFINITIONS AND INTERPRETATION.

### A. Definitions.

1.1. ***Administrative Expense Claim*** means any Claim for costs and expenses of administration incurred during the Chapter 11 Case pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b) or 507(a)(2) of the Bankruptcy Code and arising during the period up to and including the Effective Date, including, (i) the actual and necessary costs and expenses incurred after the Order for Relief Date through the Effective Date, of preserving the Estate; (ii) Fee Claims; and (iii) all fees and charges assessed against the Estate pursuant to section 1911 through 1930 of chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1-1401.

1.2. ***Administrative Expense Claims Bar Date*** means the first Business Day that is 30 days following the Effective Date, except as otherwise specifically set forth in the Plan.

1.3. ***Administrative Expense Claims Objection Bar Date*** means the first Business Day that is 60 days following the Administrative Expense Claims Bar Date, except as otherwise specifically set forth in the Plan; provided that, the Administrative Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Creditor Recovery Trustee after notice and a hearing.

1.4. ***Affiliate*** has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.5. ***Allowed*** means, (i) with respect to any Claim, (a) any Claim arising on or before the Effective Date (1) that is not Disputed, or (2) as to which all such challenges have been determined by a Final Order to the extent such challenges are determined in favor of the respective holder, (b) any Claim that is compromised, settled, or otherwise resolved pursuant to a Final Order of the Bankruptcy Court, (c) any Claim expressly allowed by Final Order of the Bankruptcy Court, (d) any Claim expressly allowed under the Plan, (e) any Claim that is listed in the Schedules as liquidated, non-contingent and undisputed, and (f) any Administrative Expense Claim (1) that was incurred by a Debtor in the ordinary course of business before the Effective Date to the extent due and owing without defense, offset, recoupment or counterclaim of any kind, and (2) that is not otherwise Disputed; provided that no Claim shall be "Allowed" if it is subject to disallowance in accordance with section 502(d) of the Bankruptcy Code. If a Claim is Allowed only in part, any provisions under the Plan with respect to Allowed Claims are applicable solely to the Allowed portion of such Claim.

1.6. ***Available Cash*** means all Cash of the Debtor, including without limitation Cash realized from his business operations prior to the Effective Date and, at any time,

from the sale or other disposition of Estate assets, the interest earned on Estate invested funds, recoveries from Causes of Action or from any other source or otherwise, less (ii) the amount of Cash (a) necessary to pay holders of Allowed Administrative Expense Claims and Priority Tax Claims in accordance with the Plan, and (b) estimated and reserved by the Creditor Recovery Trustee to (1) adequately fund the reasonable and necessary projected costs to carry out the provisions of the Plan on and after the Effective Date, including, without limitation, any costs and fees associated with administrating the Plan and Creditor Recovery Trust, and (2) pay all fees payable under section 1930 of chapter 123 of title 28 of the United States Code. Available Cash shall include the applicable portions of (i) excess amounts retained for Disputed Claims that become available in accordance with Section 6.2 and 6.9 of the Plan, or (ii) amounts represented by undeliverable distributions in accordance with Section 6.3 of the Plan.

1.7.    ***Avoidance Action*** means any avoiding power actions under the Bankruptcy Code and applicable non-bankruptcy law, including under Sections 502(d), 544, 545, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code.

1.8.    ***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended from time to time, as applicable to the Chapter 11 Case.

1.9.    ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Case and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Case under section 151 of title 28 of the United States Code.

1.10.    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Case, and any Local Rules of the Bankruptcy Court.

1.11.    ***Bar Date*** means October 1, 2018, which was the date fixed in the Bar Date Order as the deadline to file a proof of Claim in the Chapter 11 Case.

1.12.    ***Bar Date Order*** means the Order Establishing October 1, 2018 as the Deadline for Filing Proofs of Claims and Approving the Form and Manner of Notice Thereof, entered by the Bankruptcy Court on August 24, 2018.

1.13.    ***Business Day*** means any day other than a Saturday, a Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.14.    ***Cash*** means legal tender of the United States of America.

1.15.    ***Causes of Action*** means any action, Claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured,

suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Commencement Date, in contract or in tort, in law or in equity or pursuant to any other theory of law. Causes of Action also include: (i) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (ii) the right to object to Claims; (iii) any Avoidance Action; (iv) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (v) any state law fraudulent transfer claim.

1.16.    ***Chapter 11 Case*** means the case under chapter 11 of the Bankruptcy Code commenced against the Debtor, bearing the caption In re: Robert Francis Xavier Sillerman aka Robert F.X. Sillerman, aka Robert F. Sillerman, aka Robert X. Sillerman, Case No. 17-13633 – MKV and pending before the Bankruptcy Court.

1.17.    ***Claim*** has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.18.    ***Claims Objection Bar Date*** means the first Business Day that is 120 days after the Effective Date; provided that, the Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Creditor Recovery Trustee.

1.19.    ***Class*** means any group of Claims classified pursuant to Section 3.1 of the Plan.

1.20.    ***Confirmation*** means the entry on the docket of the Chapter 11 Case of the Confirmation Order.

1.21.    ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.22.    ***Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court regarding Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.23.    ***Confirmation Order*** means the order of the Bankruptcy Court, together with all exhibits, appendices, supplements, and related documents, confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.24.    ***Consummation*** means the occurrence of the Effective Date of the Plan.

1.25.    ***Creditor Recovery Trust or Trust*** means a trust to be created on or after the Effective Date in accordance with the provisions of Section 9 of the Plan and the Creditor Recovery Trust Agreement, for the benefit of Creditor Recovery Trust Beneficiaries.

1.26.    ***Creditor Recovery Trust Agreement*** means an agreement evidencing the terms and provisions governing the Creditor Recovery Trust that shall be filed with the Bankruptcy Court in the Plan Supplement and entered into prior to the establishment of

such Creditor Recovery Trust, and pursuant to which the Creditor Recovery Trustee shall manage and administer Creditor Recovery Trust Assets.

1.27.    ***Creditor Recovery Trust Assets*** means the assets of the Estate including, without limitation, all interests of the Debtor in any Entity and all Causes of Action, which are to be deemed transferred under the Plan and/or transferred by the Plan Agent to the Creditor Recovery Trust as of the Effective Date.

1.28.    ***Creditor Recovery Trust Beneficiaries*** means those holders of Allowed General Unsecured Claims who receive Creditor Recovery Trust Interests.

1.29.    ***Creditor Recovery Trust Interest*** means a non-certificated beneficial interest of the Creditor Recovery Trust allocable to holders of Allowed Claims in accordance with the terms and conditions of the Creditor Recovery Trust Agreement, which interests will not be transferable.

1.30.    ***Creditor Recovery Trustee*** means the person or entity appointed by the Creditors' Committee prior to the creation of the Creditor Recovery Trust, to administer such Creditor Recovery Trust in accordance with the provisions of Section 9 of the Plan and the Creditor Recovery Trust Agreement.  The Creditor Recovery Trustee may be the same person or entity as the Plan Agent.  The identity of the Creditor Recovery Trustee shall be filed with the Court with the Plan Supplement by no later than five days before the Voting Deadline.

1.31.    ***Creditors' Committee*** means the statutory committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code, as the same may be constituted from time to time.

1.32.    ***Cure Obligation*** means all (i) amounts (or such other amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) required to cure any monetary defaults; and (ii) other obligations required to cure any non-monetary defaults under any Executory Contract or Unexpired Lease that is to be assumed by the Debtor pursuant to sections 365 or 1123 of the Bankruptcy Code.

1.33.    ***Debtor*** means the captioned individual who is the debtor in this Chapter 11 Case.

1.34.    ***Disclosure Statement*** means the Disclosure Statement for the Plan, which is prepared and distributed in accordance with sections 1125, 1126(b) and/or 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and/or other applicable law.

1.35.    ***Disputed*** means, with respect to a Claim, any such Claim (i) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code or (ii) for which a Proof of Claim has been filed, to the extent the Debtor, the Creditors' Committee, or any party in interest has interposed a timely objection or request for estimation before the Claims Objection Bar Date in accordance with the Plan, which objection or request for estimation has not been withdrawn or determined by a Final Order.

1.36. ***Distribution Date*** means a date or dates, including the Initial Distribution Date, as determined by the Creditor Recovery Trustee in accordance with the terms of the Plan, on which the Creditor Recovery Trustee makes a distribution to holders of Allowed Claims.

1.37. ***Distribution Record Date*** means the Effective Date of the Plan.

1.38. ***Effective Date*** means the date on which all conditions to the effectiveness of the Plan set forth in Section 10 of the Plan have been satisfied or waived in accordance with the terms of the Plan and counsel to the Creditors' Committee files a notice of occurrence of Effective Date with the Bankruptcy Court.

1.39. ***Entity*** has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.40. ***Estate*** means the estate of the Debtor created under section 541 of the Bankruptcy Code and the property described in section 1115(a) of the Bankruptcy Code.

1.41. ***Exculpated Parties*** means collectively the Creditors' Committee and each of their respective members, official or *ex officio*, the Plan Agent, and the Creditor Recovery Trustee, each solely in their capacities as such, and not individually, predecessors, successors and assigns, subsidiaries, and Affiliates, and their current and former officers, directors, principals, shareholders and their Affiliates, members, managers, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, estates, servants and nominees, in each case in their capacity as such.

1.42. ***Executory Contract*** means a contract or lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.43. ***Fee Claim*** means any Claim for professional services rendered or costs incurred on or after the Involuntary Petition Date through the Effective Date by professional persons retained by the Debtor or the Creditors' Committee pursuant to sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code in the Chapter 11 Case.

1.44. ***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; provided

that, no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

1.45.    ***General Unsecured Claim*** means any unsecured Claim against the Debtor, which is not entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court.

1.46.    ***Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.47.    ***Impaired***, with respect to a Claim or Class of Claims, has the meaning set forth in section 1124 of the Bankruptcy Code.

1.48.    ***Initial Distribution*** means the first distribution that the Creditor Recovery Trustee makes to any holders of any Allowed Claims.

1.49.    ***Initial Distribution Date*** means the date selected by the Creditor Recovery Trustee as soon as reasonably practicable after the Effective Date.

1.50.    ***Involuntary Petition*** means the petition under chapter 7 of the Bankruptcy Code that was filed against the Debtor by the Petitioning Creditors.

1.51.    ***Involuntary Petition Date*** means December 27, 2017, the date the Involuntary Petition was filed against the Debtor.

1.52.    ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.53.    ***Order For Relief Date*** means March 1, 2018, the date the order for relief in the Chapter 11 Case was entered.

1.54.    ***Other Priority Claim*** means any Claim against the Debtor entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code, other than an Administrative Expense Claim or a Priority Tax Claim.

1.55.    ***Person*** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit or other entity.

1.56.    ***Plan*** means this chapter 11 plan of liquidation, including the exhibits hereto and the Plan Supplement, as the same may be amended or modified from time to time in accordance with Section 13.4 of the Plan.

1.57.    ***Plan Agent*** means the person or entity selected by the Creditors' Committee, charged with overseeing the tasks outlined in Section 5.2(b) of the Plan. The identity of the Plan Agent shall be filed with the Court with the Plan Supplement by no

later than five days before the Voting Deadline. The Plan Agent may be the same person or entity as the Creditor Recovery Trustee.

1.58. ***Plan Agent Agreement*** means an agreement evidencing the terms and provisions governing the Plan Agent that shall be filed with the Court in the Plan Supplement no later than five days before the Voting Deadline and entered into by and between the Plan Agent and the Creditors' Committee prior to the Effective Date of the Plan, and pursuant to which the Plan Agent shall administer certain aspects of the Plan.

1.59. ***Plan Oversight Committee*** means a committee consisting initially of one or more members selected by the Creditors' Committee, established pursuant to Section 5.4 of the Plan to advise and assist the Plan Agent and/or Creditor Recovery Trustee in the implementation and administration of the Plan and Creditor Recovery Trust. A list of the members of the Plan Oversight Committee shall be filed by the Creditors' Committee with the Bankruptcy Court with the Plan Supplement by no later than five days before the Voting Deadline.

1.60. ***Plan Supplement*** means the compilation of documents containing information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; provided that, through the Effective Date, the Creditors' Committee shall have the right to amend any documents contained in, and exhibits to, the Plan Supplement.

1.61. ***Postpetition Interest Claim*** means a Claim against the Debtor's Estate for interest accrued in respect of an outstanding obligation or liability that is the subject of an Allowed General Unsecured Claim during the period from the Petition Date up to and including the date of final payment in full of such Allowed General Unsecured Claim, calculated at the federal judgment rate of [____]%, the rate as in effect on the Petition Date, provided that interest shall continue to accrue only on the then outstanding and unpaid obligation or liability that is the subject of an Allowed General Unsecured Claim.

1.62. ***Priority Tax Claim*** means any secured or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.63. ***Pro Rata*** means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims and Disputed Claims within such Class.

1.64. ***Proof of Claim*** means a proof of Claim filed against the Debtor in the Chapter 11 Case.

1.65. ***Released Parties*** means collectively and in each case in their capacity as such: the Creditors' Committee and each of its official and *ex officio* members, the Plan Agent, the Creditor Recovery Trustee, but each solely in their capacities as such, and not individually; such entities' predecessors, successors and assigns, subsidiaries, and Affiliates, and its and their current and former officers, directors, principals, shareholders and their Affiliates, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants,

representatives, management companies, and other professionals, and such persons' respective heirs, executors, estates, servants and nominees.

1.66.    ***Releasing Parties*** means collectively and in each case in their capacity as such: (i) each holder of a Claim who votes to accept the Plan; (ii) each holder of a Claim who votes to reject the Plan but does not opt out of granting the releases set forth in the Plan; and with respect to each of the foregoing entities, such entities' predecessors, successors and assigns, subsidiaries, and Affiliates, and its and their current and former officers, directors, principals, shareholders, members, managers, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, estates, servants and nominees.

1.67.    ***Schedule of Assumed Contracts and Leases*** means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtor, if any, to be filed with the Plan Supplement.

1.68.    ***Schedules*** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.69.    ***Secured Claim*** means any Claim to the extent (i) secured by property of the Estate, the amount of which is equal to or less than the value of such property (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Creditors' Committee or (c) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

1.70.    ***U.S. Trustee*** means the Office of the United States Trustee for Region 2, Southern District of New York.

1.71.    ***Unexpired Lease*** means a lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.72.    ***Unimpaired*** means, with respect to a Claim, or Class of Claims, not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

1.73.    ***Voting Deadline*** means the deadline established by an Order of the Bankruptcy Court for voting to accept or reject the Plan.

B.    **Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained

therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (iv) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (v) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### C. Controlling Document.

In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the Plan shall control. The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided* that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## SECTION 2. ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.

### 2.1. *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim and the Creditors' Committee or the Creditor Recovery Trustee agree to different treatment, the Creditor Recovery Trustee shall pay to each holder of an Allowed Administrative Expense Claim, in full satisfaction, settlement, release and discharge of, and in exchange for such Allowed Administrative Expense Claim, Cash in an amount equal to such Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that is 30 calendar days after the Administrative Expense Claim Bar Date; *provided* that Fee Claims shall receive the treatment provided in Section 2.2 of the Plan; *provided further* that Allowed Administrative Expense Claims representing liabilities incurred prior to the Effective Date by the Debtor in the ordinary course of business and not in violation of any Bankruptcy Court order, the Bankruptcy Code or Bankruptcy Rules, shall be paid by the Creditor Recovery Trustee in the ordinary course of business, consistent with any Final Order of the Bankruptcy Court in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions, except that any Administrative Expense Claim representing a liability incurred in the ordinary course of business shall be barred and the holder thereof shall not be entitled to a distribution under the Plan if such ordinary course liability is not billed, or a request for payment is not made, on or before the Administrative Expense Claims Bar Date.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court (including the Bar Date Order), requests for payment of Administrative Expense Claims, other than requests for payment of Fee Claims, must be filed and served on the Creditor Recovery Trustee no later than the Administrative Expense Claims Bar Date pursuant to the procedures specified in the Confirmation Order and/or the notice of entry of the Confirmation Order.

Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Estate and its property, and such Administrative Expense Claims shall be deemed released as against the Estate as of the Effective Date. The Creditor Recovery Trustee must file and serve objections to Administrative Expense Claims on or before the Administrative Expense Claims Objection Bar Date.

## 2.2. *Fee Claims.*

All entities seeking an award by the Bankruptcy Court of Fee Claims (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is 30 days after the Effective Date and (ii) shall be paid in full in such amounts as are Allowed by the Bankruptcy Court (a) on the date upon which the Order relating to any such Allowed Fee Claim is entered, or as soon thereafter as is reasonably practicable, or (b) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Creditor Recovery Trustee. The Creditor Recovery Trustee is authorized to pay compensation for professional services rendered or reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.  Any dispute over such compensation or reimbursement shall be determined by the Bankruptcy Court upon notice and motion.

## 2.3. *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment or a different treatment is expressly provided for under the Bankruptcy Code which the Creditor Recovery Trustee determines is in the best interest of the Creditor Recovery Trust, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for such Allowed Priority Tax Claim, Cash in an amount equal to such Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date, the first Business Day after the date that is 30 calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and the date such Allowed Priority Tax Claim is due and payable in the ordinary course.

## SECTION 3. **CLASSIFICATION OF CLAIMS.**

### 3.1. *Classification in General.*

A Claim is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided* that, a Claim is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that

Class and such Claim has not been satisfied, released, or otherwise settled prior to the Effective Date.

### 3.2. *Summary of Classification.*

The following table designates the Classes of Claims against the Debtor and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code and (iii) deemed to reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims set forth in Section 3 of the Plan. All of the potential Classes for the Debtor are set forth in the Plan.

| Class | Designation | Treatment | Entitled to Vote |
|:---:|---|:---:|:---:|
| 1 | Other Priority Claims | Unimpaired | No (presumed to accept) |
| 2 | Secured Claims | Unimpaired | No (presumed to accept) |
| 3 | General Unsecured Claims | Impaired | Yes |

### 3.3. *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Creditors' Committee or the Creditor Recovery Trustee, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

### 3.4. *Elimination of Vacant Classes.*

Any Class of Claims that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

### 3.5. *Voting Classes; Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims eligible to vote and no holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Creditors' Committee shall request that the Bankruptcy Court at the Confirmation Hearing deem the Plan accepted by the holders of such Claims in such Class.

# SECTION 4.  **TREATMENT OF CLAIMS.**

### 4.1.  *Other Priority Claims (Class 1).*

(a)  *Classification*: Class 1 consists of Allowed Other Priority Claims against the Debtor.

(b)  *Treatment*: Except to the extent that a holder of an Allowed Other Priority Claim has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Claim, payable as soon as reasonably practical on the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Other Priority Claim.

(c)  *Voting*: Class 1 is Unimpaired, and the holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

### 4.2.  *Secured Claims (Class 2).*

(a)  *Classification*: Class 2 consists of Secured Claims.

(b)  *Treatment*: Except to the extent that a holder of an Allowed Secured Claim has agreed to less favorable treatment of such Claim, each holder of an Allowed Secured Claim shall receive, at the option of the Creditors Recovery Trustee, (i) payment in full in Cash in full and final satisfaction of such Claim, payable on the later of the Effective Date and the date on which such Secured Claim becomes an Allowed Secured Claim, or as soon as reasonably practical thereafter, (ii) delivery of the collateral securing such Allowed Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code, or (iii) such other treatment necessary to satisfy section 1129 of the Bankruptcy Code; *provided, however*, that Secured Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business in accordance with such applicable terms and conditions relating thereto. Nothing in this Plan shall preclude the Creditors' Committee or the Creditor Recovery Trustee, as applicable, from challenging the validity of any alleged Secured Claim, Lien or the value of the property that secures any alleged Lien allegedly securing an Allowed Secured Claim.

(c)  Voting: Class 2 is Unimpaired, and the holders of Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Secured Claims are not entitled to vote to accept or reject the Plan.

### 4.3.  *General Unsecured Claims (Class 3).*

(a)  *Classification*: Class 3 consists of General Unsecured Claims against the Debtor.

(b) *Treatment*: On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Allowed General Unsecured Claim or has been paid before the Effective Date, each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Claim, its Pro Rata share of (i) Available Cash and (ii) the Creditor Recovery Trust Interests, in an aggregate amount equal to (a) such holder's Allowed General Unsecured Claim, and (b) in the event that all Allowed Claims are paid in full, such holder's Postpetition Interest Claim, in each case as reduced by prior distributions of Available Cash on each such Allowed General Unsecured Claim. In no event shall the holder of a General Unsecured Claim receive distributions on account of such Claim in excess of the Allowed amount of such General Unsecured Claim and Postpetition Interest Claim.

(c) *Voting*: Class 3 is Impaired, and holders of Allowed General Unsecured Claims in Class 3 are entitled to vote to accept or reject the Plan.

## SECTION 5. **MEANS FOR IMPLEMENTATION.**

### 5.1. *Vesting of Estate Property in Creditor Recovery Trust*

On the Effective Date, except as otherwise set forth herein, all Estate property (including Causes of Action), shall be deemed to have been transferred to the Creditor Recovery Trust automatically and without further action (but the Plan Agent may take any and all necessary and/or advisable action to effectuate such transfer), which transfer shall be, and shall be deemed to be, free and clear of any and all liens, claims, Claims, interests and encumbrances; provided that any Creditor Recovery Trust Asset that serves as collateral for an Allowed Secured Claim shall be transferred subject to such lien or encumbrance and any Creditor Recovery Trust Asset that serves as collateral for a Disputed Secured Claim shall be transferred subject to such lien or encumbrance pending the determination of the Allowance of such Claim by Final Order. The transfer of Estate property shall be deemed to have occurred on the Effective Date, without any requirement to execute any documents or agreements, and whether or not such Estate property has been actually and physically transferred to the Plan Agent or Creditor Recovery Trust's possession. Upon such transfer, the Debtor shall be divested of all right, title and interest in and to such Estate property, which property shall be treated as Creditor Recovery Trust Assets, and shall no longer be authorized to exercise control over any such property.

The Creditor Recovery Trustee may determine in its sole discretion not to accept delivery or ownership of certain assets of the Estate as Creditor Recovery Trust Assets, which assets shall be deemed not transferred to and shall otherwise not be transferred to the Creditor Recovery Trust and shall not become Creditor Recovery Trust Assets. In the event the Creditor Recovery Trustee determines not to accept delivery of certain assets as Creditor Recovery Trust Assets, the Creditor Recovery Trustee shall use best efforts to provide written notice to the Plan Oversight Committee, the Plan Agent, the Debtor and any other Person or Entity known to the Creditor Recovery Trustee to have an interest in such assets.

5.2.    ***Plan Agent.***

(a)    Appointment. The Creditors' Committee shall appoint the Plan Agent no later than five days before the Voting Deadline. The Plan Agent's retention shall commence on the Effective Date and shall continue until the earlier of: (i) entry of a Bankruptcy Court order closing the Chapter 11 Case; (ii) entry of a Bankruptcy Court order removing the Plan Agent for cause (as defined below); (iii) the Plan Agent's voluntary resignation upon notice to the Plan Oversight Committee and the filing of such notice with the Bankruptcy Court, and the Plan Oversight Committee appointment of a successor; or (iv) as otherwise ordered by Bankruptcy Court.

(b)    Authority. The Plan Agent shall have the authority and right on behalf the Debtor and the Estate, without the need for Bankruptcy Court approval (unless otherwise specified in the Plan or Plan Agent Agreement), to carry out and implement all provisions of the Plan in accordance with the Plan Agent Agreement other than those assigned to the Creditor Recovery Trustee, including, without limitation, to:

(i)    take all necessary or advisable actions to cause the Creditor Recovery Trust Assets and the Available Cash to be transferred to the Creditor Recovery Trust as of the Effective Date, including the execution and delivery of any necessary or appropriate document transferring title of any asset from the name of the Debtor to the Creditor Recovery Trustee, which transfer shall be, and shall be deemed to be, free and clear of any and all liens, claims, Claims, interests and encumbrances provided that any Creditor Recovery Trust Asset that serves as collateral for an Allowed Secured Claim shall be transferred subject to such lien or encumbrance and any Creditor Recovery Trust Asset that serves as collateral for a Disputed Secured Claim shall be transferred subject to such lien or encumbrance pending the determination of the Allowance of such Claim by Final Order.

(ii)    provide to the Creditor Recovery Trustee all documents and other information owned, controlled or available to the Debtor that may be necessary, appropriate or advisable to aid the Creditor Recovery Trustee in liquidating Estate assets or pursuing Causes of Action;

(iii)    assist the Creditor Recovery Trustee in obtaining possession and control of such books and records of the Debtor as may be necessary, appropriate or advisable to aid in the implementation of the Plan or the Creditor Recovery Trust;

(iv)    notify financial institutions and Persons which owe money or hold property belonging to the Debtor that the Plan Agent is vested with complete control over and rights to such accounts, debts owed to the Debtor, and money and property belonging to the Debtor and has the right and obligation to convey such accounts, debts, money and property to the Creditor Recovery Trustee, including without limitation to endorse the payment of notes or other obligations of any Person;

(v)    take and exercise control over any and all bank and other accounts in which the Debtor holds any interest, to the exclusion of the Debtor, including without limitation acting as sole signatory respecting such accounts;

(vi)     act as sole signatory for all checks, drafts or other orders for the payment of money, and all notes or other evidences of indebtedness issued in the name of the Debtor;

(vii)     incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Plan Agent;

(viii)     take any and all necessary and/or advisable actions, including if necessary, with the aid of the Bankruptcy Court, to transfer to the Creditor Recovery Trust Assets to the Creditor Recovery Trust; and

(ix)     cooperate with the Creditor Recovery Trustee and Plan Oversight Committee and perform other duties and functions that are consistent with the implementation of the Plan to the extent not a duty or function of the Creditor Recovery Trustee.

(c)     Compensation/Reimbursement of Expenses.  As more fully set forth in and subject to the Plan Agent Agreement, the Plan Agent shall be entitled to compensation and reimbursement for reasonable expenses incurred in the course of rendering services under the Plan, including without limitation reasonable fees and expenses of its retained professionals, which compensation and reimbursement shall be subject to review by the Plan Oversight Committee on the terms set forth in the Plan Agent Agreement.

### 5.3.     *Debtor's Obligations*

The Debtor shall cooperate with the Plan Agent to effectuate the automatic transfer of all Estate property to the Creditor Recovery Trust and shall execute any and all documents that may be necessary, appropriate or advisable, in the discretion of the Plan Agent, to cause such transfer to be effective and/or reflected on any applicable public record.  To the extent necessary or desirable, the Plan Agent shall have the authority, right and power to execute any document necessary, appropriate or advisable, in the name of the Debtor as the Debtor's attorney in fact, to effectuate such transfer.  No person dealing with the Plan Agent shall be obligated to inquire into the authority of the Plan Agent in connection with the transfer of Estate property to the Creditor Recovery Trust.  After the Confirmation Date and before the Effective Date, the Debtor shall turn over to the Creditors' Committee for further turnover to the Creditor Recovery Trust when it is established, all books and records deemed necessary, appropriate or advisable to aid in the implementation of the Plan and its provisions. Upon the Effective Date, and from time to time thereafter upon request of the Creditor Recovery Trustee, the Debtor shall turn over to the Creditor Recovery Trust all books and records deemed necessary, appropriate or advisable by the Creditor Recovery Trustee, the Plan Agent, and/or Plan Oversight Committee to effectuate the terms of the Plan and implement its provisions.

### 5.4.     *Plan Oversight Committee*

The Creditors' Committee shall appoint the Plan Oversight Committee, which shall initially be comprised of one or more members willing to serve, which may include one or more members of the Creditors' Committee, no later than five days before the Voting Deadline.  In the

event that the Creditors' Committee for any reason does not make such appointment, the Plan Oversight Committee may be appointed by any chapter 11 operating trustee appointed in the Chapter 11 Case or by the Bankruptcy Court, on motion of any creditor or the U.S. Trustee. The Plan Oversight Committee's existence shall commence on the Effective Date and shall continue until the earlier of it not having at least one member and the making of all payments that will be made to holders of Allowed Claims under this Plan. In the event of the death or resignation of any member of the Plan Oversight Committee, such Plan Oversight Committee's remaining member(s) shall be entitled to designate a successor member from among the holders of Allowed Claims. If a Plan Oversight Committee member assigns its Claim in full or releases the Debtor, the Estate or the Trust from payment of the balance of its Claim, such act shall constitute a resignation from the Plan Oversight Committee. Until a vacancy on the Plan Oversight Committee is filled, such Plan Oversight Committee shall function in its reduced number. In the event that there is no Plan Oversight Committee, the Plan shall continue to be implemented, subject to any oversight that the Bankruptcy Court may order on motion of any creditor or the U.S. Trustee, that may be necessary or appropriate.

Promptly following the establishment of the Plan Oversight Committee, the Plan Oversight Committee shall enact bylaws governing its operating procedures and related matters, as deemed appropriate in the Plan Oversight Committee's sole discretion. While decision making authority will reside with the Plan Agent and the Creditor Recovery Trustee as set forth in the Plan and Plan Supplement, each will meet and/or consult with the Plan Oversight Committee periodically and the Plan Oversight Committee will have standing to seek the removal of the Plan Agent and/or the Creditor Recovery Trustee and appoint its successor for "cause" as that term is defined in the Plan Agent Agreement or Creditor Recovery Trust Agreement, as applicable.

Members of the Plan Oversight Committee shall be entitled to reimbursement of reasonable and necessary expenses, exclusive of legal fees and disbursements of any professionals retained by such individual members, incurred in carrying out their duties as members of the Plan Oversight Committee, all of which shall be paid by the Creditor Recovery Trustee from Available Cash. The Plan Oversight Committee may retain professionals, and the Creditor Recovery Trustee shall pay such professionals reasonable compensation for services rendered and expenses incurred on behalf of the Plan Oversight Committee in accordance with the procedures set forth herein. Any professional(s) retained by the Plan Oversight Committee shall be paid by the Creditor Recovery Trustee within 10 days following the delivery of an invoice to the Creditor Recovery Trustee (with copy to the Plan Oversight Committee) reasonably describing the services rendered and expenses incurred on behalf of the Plan Oversight Committee, or as soon thereafter as is reasonably practicable, absent an objection by the Creditor Recovery Trustee to all or part of such invoice served upon such professional(s) (with copy to the Plan Oversight Committee) prior to the expiration of such 10-day period. In the event of an objection to any invoice presented by the professional(s) retained by the Plan Oversight Committee, such professional(s) may be paid any part of the invoice which was not objected to, and absent a consensual resolution of the objection, the professionals(s) may be paid any part of the invoice approved by the Bankruptcy Court after motion on notice to the Creditor Recovery Trustee and the Plan Oversight Committee, describing the dispute over payment of the invoice.

The Plan Oversight Committee shall review the fees and expenses of the Plan Agent, the Creditor Recovery Trustee, and each of their respective retained professionals on the terms set forth in the Plan Agent Agreement or the Creditor Recovery Trust Agreement, as

applicable. Following all payments being made to holders of Allowed Claims under this Plan, the Plan Oversight Committee shall be dissolved and the members thereof shall be released from any and all further authority, duties, responsibilities, and obligations related to their service as Plan Oversight Committee members.

5.5. *Wind Down.*

The wind-down, sale and liquidation of such assets (as determined for federal income tax purposes) shall occur over a period of no more than three years after the Effective Date (it being understood that such liquidation may include the transfer of all or part of the assets of such Debtor to the Creditor Recovery Trust within the meaning of Treas. Reg. § 301.7701-4 and in accordance with Section 10 of the Plan); *provided* that, the wind-down and liquidation may extend over a longer period of time if the Creditor Recovery Trustee receives a private letter ruling or other equivalent guidance from the IRS from which the Creditor Recovery Trustee reasonably concludes that the continued wind-down and liquidation should not result in a reduction or limitation of the Debtor's tax attributes for federal income tax purposes that materially impairs the expected actual use of such tax attributes.

5.6. *No Liability*

Except to the extent of any bond provided by the Creditor Recovery Trustee, if any, or as otherwise provided in this Plan, the Plan Agent Agreement or the Creditor Recovery Trust Agreement, no recourse shall ever be had, directly or indirectly, against the Creditor Recovery Trustee, the Plan Agent, the Plan Oversight Committee, the Plan Oversight Committee's members, and their respective representatives, agents, employees, professionals, successors, or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or agreement whatsoever executed by the Creditor Recovery Trustee, the Plan Agent, or the Plan Oversight Committee under the Plan or by reason of the creation of any indebtedness by the Creditor Recovery Trustee, the Plan Agent, or the Plan Oversight Committee under the Plan for any purpose authorized by the Plan. All such liabilities, covenants, and agreements of the Creditor Recovery Trustee, the Plan Agent, the Plan Oversight Committee, and their respective representatives, agents, employees, professionals, successors, or assigns, whether in writing or otherwise, under the Plan shall be enforceable only against, and shall be satisfied only out of such bond, if any, in favor of the Creditor Recovery Trustee, and the Creditor Recovery Trust Assets or such part thereof as shall, under the terms of any such agreement, be liable therefor, or shall be evidence only of a right of payment out of the income and proceeds from the liquidation of the Creditor Recovery Trust Assets, as the case may be. Every undertaking, contract, covenant, or agreement entered into in writing by the Creditor Recovery Trustee, Plan Agent, or Plan Oversight Committee shall provide expressly against the personal liability of the Creditor Recovery Trustee, the Plan Agent, the Plan Oversight Committee, and the Plan Oversight Committee's members. The foregoing limitations on liability shall not apply in the event of willful misconduct, gross negligence or fraud on the part of the Creditor Recovery Trustee, the Plan Agent, the Plan Oversight Committee, the Plan Oversight Committee's members, and their respective representatives, agents, employees, professionals, successors, or assigns. The Creditor Recovery Trustee, the Plan Agent and/or the Plan Oversight Committee and any other Exculpated Parties shall be entitled to rely on the injunction and exculpation provisions set forth in this Plan.

Neither the Creditor Recovery Trustee, the Plan Agent, the Plan Oversight Committee, the Plan Oversight Committee's members, and their respective representatives, agents, employees, professionals, successors, or assigns shall be liable for any act or omission of one another, nor shall the Creditor Recovery Trustee, the Plan Agent, the Plan Oversight Committee, the Plan Oversight Committee's members, and their respective representatives, agents, employees, professionals, successors, or assigns be liable for any act or omission taken or not taken in such capacity other than for specific acts or omissions resulting from Creditor Recovery Trustee, the Plan Agent, the Plan Oversight Committee, the Plan Oversight Committee's members, and their respective representatives, agents, employees, professionals, successors, or assigns willful misconduct, gross negligence, or fraud. The Creditor Recovery Trustee, the Plan Agent and the Plan Oversight Committee may, in connection with the performance of their respective functions, and in their sole and absolute discretion, consult with professionals, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons or entities, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, the Creditor Recovery Trustee, the Plan Agent and the Plan Oversight Committee shall not be under any obligation to consult with professionals, and the determination not to do so shall not result in the imposition of liability on the Creditor Recovery Trustee, the Plan Agent, the Plan Oversight Committee, or any of their respective representatives, agents, employees, professionals, successors, or assigns, unless such determination is based on willful misconduct, gross negligence, or fraud.

No action shall be maintained against any of the Creditor Recovery Trustee, the Plan Agent, the Plan Oversight Committee or the Plan Oversight Committee's members, in connection with the performance of their respective functions under the Plan, the Creditor Recovery Trust Agreement and/or the Plan Agent Agreement, as applicable, absent leave of the Bankruptcy Court.

5.7.    ***Indemnification***

The Estate, to the extent still in existence, and the Creditor Recovery Trust shall indemnify and hold harmless the Creditor Recovery Trustee, the Plan Agent, the Plan Oversight Committee, the Plan Oversight Committee's members, and their respective representatives, agents, employees, professionals, successors, or assigns from and against and in respect of all liabilities, losses, damages, claims, costs, and expenses, including, without limitation, reasonable attorneys' fees, disbursements, and related expenses, which such Persons may incur or to which such Persons may become subject to in connection with any action, suit, proceeding, or investigation brought by or threatened against such Persons arising out of or due to their acts or omissions or consequences of such acts or omissions, with respect to the implementation or administration of the Plan, the Plan Agent Agreement or the Creditor Recovery Trust, or the discharge of their duties thereunder, to the extent such losses are not covered by a bond, if any, or other applicable insurance; *provided, however,* that no such indemnification shall be made to such Persons for actions or omissions as a result of their willful misconduct, gross negligence, or fraud.

5.8.    ***Other Transactions***

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Plan Agent and the Creditor Recovery Trustee) shall be deemed authorized,

approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims, the Debtor, or any other Entity or Person. All matters provided for in the Plan involving the transfer of the assets of the Estate to the Creditor Recovery Trust, and any corporate or other Entity action that might be required by or of the Debtor or any Entity in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtor or the Estate; *provided, however*, that to the extent any action may be necessary, appropriate or advisable, without further authority, to transfer or document the transfer of Estate property to the Creditor Recovery Trust, the Plan Agent may execute any and all documents necessary, appropriate or advisable in the name of or as the authorized agent for the Debtor, including, without limitation for the transfer of ownership interests in Entities owned by the Debtor, in whole or in part, or the exercise of all control and other indicia of ownership which such ownership afforded the Debtor.

5.9. ***Withholding and Reporting Requirements.***

(a) *Withholding Rights*. In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements. Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution. Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b) *Forms*. Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Creditor Trustee or such other Person designated by the Creditor Recovery Trustee (which entity shall subsequently deliver such forms to the Creditor Recovery Trustee) an appropriate Form W-9 or if the payee is a foreign Person, Form W-8 (or any such other form as may be required by the IRS or other Governmental Unit related to income, withholding and other taxes on account of a distribution under the Plan), unless such Person is exempt under the tax code and so notifies the Creditor Recovery Trustee or such other Person. If a request for a Form W-9, Form W-8 or other applicable form is made by the Creditor Recovery Trustee or such other Person designated by the Creditor Recovery Trustee and the holder fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the Estate or Trust and any Claim in respect of such distribution shall be discharged and forever barred from assertion against the Debtor, Estate or Trust and its respective property. Alternatively, the Creditor Recovery Trustee, in its sole discretion, may make distributions to a creditor that has failed to return (or return timely), a Form W-8 or Form W-9, or other applicable form. In such case, the distribution shall be net the maximum amount of all applicable withholding taxes or such other amount as the Creditor Recovery Trustee deems necessary or appropriate.

### 5.10. *Exemption from Certain Transfer Taxes.*

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale or transfer of any Estate assets to or Creditor Recovery Trust Assets from the Creditor Recovery Trust, or any sale or transfer of, from or by any Entity in which the Debtor had as of the Effective Date an interest, pursuant to, in contemplation of, or in connection with the Plan or pursuant to the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 5.11. *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Plan Agent is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such other similar actions as may be necessary or appropriate to effectuate and/or implement  the transfer of Estate assets to the Creditor Recovery Trustee and further evidence such transfer, on behalf the Debtor and without the need for any approvals, authorization, or consents.

### 5.12. *Preservation of Rights of Action.*

Other than specific, identified Causes of Action against an Entity that are expressly and specifically waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order of the Bankruptcy Court, the Creditors' Committee and the Estate reserve any and all Causes of Action including, without limitation, any challenge concerning any property claimed by the Debtor to be exempt property pursuant to section 522 of the Bankruptcy Code. On and after the Effective Date, the Creditor Recovery Trustee may pursue such Causes of Action in its sole discretion, in the name of the Creditor Recovery Trustee on behalf of the Creditor Recovery Trust. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Creditor Recovery Trustee will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Prior to the Effective Date, the Creditors' Committee, the Estate, and on and after the Effective Date, the Creditor Recovery Trustee, shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything

contained in the Plan to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of the Plan itself shall be resolved only by Confirmation of the Plan itself.

### 5.13. *Closing of the Chapter 11 Case.*

After the Chapter 11 Case of the Debtor has been fully administered, the Creditor Recovery Trustee shall promptly seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## SECTION 6. **DISTRIBUTIONS.**

### 6.1. *Distribution Record Date.*

As of the close of business on the Distribution Record Date, there shall be no further changes in the record of holders of any of the Claims. Neither the Creditor Recovery Trustee, nor any other Person or Entity, shall have any obligation to recognize any transfer of a Claim occurring on or after the Distribution Record Date.

### 6.2. *Date of Distributions.*

Except as otherwise provided in the Plan, the Creditor Recovery Trustee shall make the Initial Distribution to holders of Allowed Claims no later than the Initial Distribution Date or as soon as reasonably practical and, thereafter, the Creditor Recovery Trustee shall from time to time determine the subsequent Distribution Dates. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

The Creditor Recovery Trustee shall, from time to time, maintain a reserve in an amount sufficient to pay holders of Disputed Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims. In the event the holders of Allowed Claims have not received payment in full on account of their Claims after the resolution of all Disputed Claims, then the Creditor Recovery Trustee shall make a final distribution to all holders of Allowed Claims.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any Postpetition Interest Claim that is actually payable in accordance with the Plan.

### 6.3. *Delivery of Distributions.*

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Creditor Recovery Trustee has been able to determine through reasonable efforts the then current address of such holder, at which time such distribution shall be made to such holder without interest; *provided* that, such distributions shall be deemed unclaimed property at the expiration of six months from the date the applicable distribution is made if the Creditor Recovery Trustee is unable to determine the then current

address for such holder. Distribution checks that remain uncashed on the date that is six months after the date of mailing also shall be deemed unclaimed property. All unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Creditor Recovery Trust automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan and the Claim of any such holder to such distribution and all future distributions shall be released, settled, compromised, and forever barred.

### 6.4. *Manner of Payment Under Plan.*

At the option of the Creditor Recovery Trustee, any Cash payment to be made under the Plan may be made by a check or wire transfer.

### 6.5. *Minimum Cash Distributions.*

The Creditor Recovery Trustee shall not be required to make any payment to any holder of an Allowed Claim on any Distribution Date of Cash less than $100; *provided* that, if any distribution is not made pursuant to this Section 6.5 of the Plan, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim. The Creditor Recovery Trustee shall not be required to make any final distributions of Cash less than $50 to any holder of an Allowed Claim. If all Allowed Claims (other than those whose distributions are deemed undeliverable under the Plan) have been paid in full, any surplus Cash shall revert to the Debtor to the extent provided in Section 9.11(b) of the Plan. If the amount of any final distributions to holders of Allowed Claims would be $50 or less and the aggregate amount of Cash available for distributions to holders of Allowed General Unsecured Claims is less than $5,000, then the Creditor Recovery Trustee, in its sole discretion may opt to make no further distributions and, in such case, any surplus Cash shall revert to the Debtor to the extent provided in Section 9.11(b) of the Plan.

### 6.6. *Setoffs.*

The Creditor Recovery Trustee may, but shall not be required to, set off against any Claim, any Claims of any nature whatsoever that the Debtor, the Estate or the Creditor Recovery Trustee may have against the holder of such Claim; *provided* that, neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, the Estate or the Creditor Recovery Trustee of any such Claim that such party may have against the holder of such Claim.

### 6.7. *Distributions After Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

### 6.8. *Allocation of Distributions Between Principal and Interest.*

Except as otherwise provided in the Plan, to the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid

interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

### 6.9. *Payment of Disputed Claims.*

As Disputed Claims are resolved pursuant to Section 7 of the Plan, the Creditor Recovery Trustee shall make distributions on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date. Such distributions shall be made on the first Distribution Date that is at least 45 days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the Creditor Recovery Trustee in Creditor Recovery Trustee's sole discretion.

## SECTION 7. **PROCEDURES FOR DISPUTED CLAIMS.**

### 7.1. *Allowance of Claims.*

After the Effective Date, the Creditor Recovery Trustee shall have and shall retain any and all rights and defenses that the Debtor or the Estate had with respect to any Claim, except with respect to any Claim deemed Allowed under the Plan. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim.

### 7.2. *Objections to Claims.*

As of the Effective Date, objections to, and requests for estimation of, Claims against the Debtor or the Estate may be interposed and prosecuted only by the Creditor Recovery Trustee. Such objections and requests for estimation shall be served and filed (i) on or before the 120th day following the later of (a) the Effective Date and (b) the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim or (ii) such later date as ordered by the Bankruptcy Court upon motion filed by the Creditor Recovery Trustee.

### 7.3. *Estimation of Claims.*

The Creditor Recovery Trustee may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor, the Creditors' Committee or the Creditor Recovery Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Creditor Recovery Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection,

estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 7.4. *No Distributions Pending Allowance.*

If an objection to a Claim is filed as set forth in Section 7 of the Plan, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

### 7.5. *Resolution of Claims.*

Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Creditor Recovery Trustee shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection with the Plan; *provided*, that the Creditor Trustee may seek such approval in its sole discretion or if requested by the Plan Oversight Committee. The Creditor Recovery Trustee or its successor may pursue such retained Claims, rights, Causes of Action, suits or proceedings, as appropriate, in accordance with its business judgment.

### 7.6. *Disallowed Claims.*

All Claims held by persons or entities against whom or which the Debtor, Creditors' Committee or the Creditor Recovery Trustee has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code shall be deemed "disallowed" Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this section shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Debtor, the Estate or the Creditor Recovery Trustee from such party have been paid.

## SECTION 8. **EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

### 8.1. *Assumption and Assignment of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) is specifically designated on the Schedule of Assumed Contracts and Leases filed with the Plan Supplement; or (ii) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan.

8.2. ***Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.***

Any Cure Obligation due under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment in Cash on the Effective Date, subject to the limitation described below, as an Administrative Expense Claim, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (i) the amount of the Cure Obligation, (ii) the ability of the Estate or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (iii) any other matter pertaining to assumption, the Cure Obligations required by section 365(b)(1) of the Bankruptcy Code shall be satisfied following the entry of a Final Order resolving the dispute and approving the assumption; provided that, such party may settle any dispute regarding the amount of any Cure Obligation without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

At least 14 days before the Confirmation Hearing, the Creditors' Committee shall cause notice of proposed Cure Obligations to be sent to applicable counterparties to the Executory Contracts and Unexpired Leases. Any objection by such counterparty must be filed, served, and actually received by the Creditors' Committee not later than 10 days after service of notice of the Debtor's proposed assumption and associated Cure Obligation. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed cure amount will be deemed to have assented to such Cure Obligation.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Obligations, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the Effective Date of assumption and/or assignment. Any prepetition default amount set forth in the Schedules and/or any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

8.3. ***Claims Based on Rejection of Executory Contracts and Unexpired Leases.***

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be filed with Bankruptcy Court and served on the Creditor Recovery Trustee no later than 14 days after the effective date of rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Creditors' Committee, no later than 14 days after notice of the proposed rejection of such Executory Contract or Unexpired Lease.

**Any holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely filed as set forth in the paragraph above shall <u>not</u> (i) be treated as a creditor with respect to such Claim, (ii) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (iii) participate in any distribution in the Chapter 11 Case on account of such**

**Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, Creditor Recovery Trustee, the Estate, or the property of any of the foregoing, without the need for any objection by the Creditor Recovery Trustee or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

8.4. ***Modifications, Amendments, Supplements, Restatements, or Other Agreements.***

Each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

8.5. ***Reservation of Rights.***

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Estate has any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor, Creditors' Committee or the Creditor Recovery Trustee, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

## SECTION 9. **CREDITOR RECOVERY TRUST.**

9.1. ***Execution of Creditor Recovery Trust Agreement.***

On the Effective Date, the Plan Agent and the Creditor Recovery Trustee shall execute the Creditor Recovery Trust Agreement and shall take all other necessary steps to establish the Creditor Recovery Trust and Creditor Recovery Trust Interests therein, which shall be for the benefit of Creditor Recovery Trust Beneficiaries. The Creditor Recovery Trust Agreement may provide powers, duties and authorities in addition to those explicitly stated in the Plan, but only to

the extent that such powers, duties, and authorities do not affect the status of the Creditor Recovery Trust as a "liquidating trust" for United States federal income tax purposes.

### 9.2. *Purpose of Creditor Recovery Trust.*

The Creditor Recovery Trust shall be established for the sole purpose of taking title to and liquidating and distributing the assets of the Estate contributed to such Creditor Recovery Trust in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. The Creditor Recovery Trustee shall exercise its reasonable business judgment to direct and control the wind down, liquidation, sale and/or abandoning of the Creditor Recovery Trust Assets in accordance with applicable law as necessary to maximize distributions to Creditor Recovery Trust Beneficiaries. The Creditor Recovery Trustee shall also prosecute all Causes of Action transferred to the Creditor Recovery Trust, elect not to pursue any such Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Creditor Recovery Trustee may determine is in the best interests of the Creditor Recovery Trust Beneficiaries.

### 9.3. *Creditor Recovery Trust Assets.*

The Creditor Recovery Trust shall consist of Creditor Recovery Trust Assets. After the creation of the Creditor Recovery Trust pursuant to Section 9 of the Plan, all of the Creditor Recovery Trust Assets shall be deemed transferred to the Creditor Recovery Trust, and the Plan Agent shall take any necessary or advisable actions to transfer more effectively and/or cause to be transferred more effectively, all such assets to the Creditor Recovery Trust. No Estate or Creditor Recovery Trust Assets shall vest in the Debtor, except as may be expressly set forth in the Plan. To the extent expressly required by the Plan, and in all other cases in the sole discretion of the Creditor Recovery Trustee, any Creditor Recovery Trust Assets may be transferred to the Creditor Recovery Trust and out of the Creditor Recovery Trust, including through abandonment, subject to certain liabilities as declared by the Creditor Recovery Trustee. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting or other similar tax to which the exemption under section 1146 of the Bankruptcy Code applies. The Debtor shall cooperate in all respects with the transfer of the Estate's assets to the Creditor Recovery Trust.

### 9.4. *Administration of Creditor Recovery Trust.*

The Creditor Recovery Trust shall be administered by the Creditor Recovery Trustee pursuant to the Creditor Recovery Trust Agreement and the Plan.

(a) Appointment. The Creditors' Committee shall appoint the Creditor Recovery Trustee no later than five days before the Voting Deadline. The Creditor Recovery Trustee's retention shall commence on the Effective Date and shall continue until the earlier of: (i) the Creditor Recovery Trust is dissolved under applicable state law; (ii) the Bankruptcy Court enters an order removing the Creditor Recovery Trustee for cause; (iii) the Creditor Recovery Trustee voluntarily resigns, upon notice to the Plan Oversight Committee and filed with the Bankruptcy Court, and the Plan Oversight Committee appoints a successor; or (vi) as otherwise ordered by the Bankruptcy Court.

(b) Authority. The Creditor Recovery Trustee shall have the authority without the need for Bankruptcy Court approval (unless otherwise specified in the

Plan or Creditor Recovery Trust Agreement), to carry out and implement all provisions of the Plan in accordance with the Creditor Recovery Trust Agreement other than those assigned to the Plan Agent, including, without limitation, to:

(i)     make distributions to holders of Allowed Claims in accordance with the Plan from Available Cash, net of expenses permitted under the Plan to be paid therefrom;

(ii)    exercise its reasonable business judgment to direct and control the wind down, liquidation, sale and/or abandoning of assets of the Estate transferred to the Creditor Recovery Trust, in accordance with applicable law as necessary or appropriate to maximize distributions to holders of Allowed Claims, including to the extent feasible or desirable by minimizing expenses to the Estate and the Creditor Recovery Trust;

(iii)   make payments in the ordinary course and without further Court order to professionals retained by the Creditors' Committee, which continue to perform in their current capacities on and after the Confirmation Date through the Effective Date;

(iv)    administer the Estate's tax obligations, including (a) filing tax returns and paying tax obligations, (b) requesting, if necessary, an expedited determination of any unpaid tax liability of the Debtor or his Estate under section 505(b) of the Bankruptcy Code for all taxable periods of the Debtor ending after the Involuntary Petition Date through the liquidation of the Debtor as determined under applicable tax laws, and (c) representing the interest and account of the Debtor's Estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(v)     prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtor that are required under the Plan, by any Governmental Unit or applicable law;

(vi)    pay statutory fees in accordance with Section 13.1 of the Plan;

(vii)   pay all Allowed Administrative Expenses as expenses of the Creditor Recovery Trust; pay all other expenses of the Creditor Recovery Trust; and subject to applicable state law, exercise such rights as the Debtor would have as the holder of interests in limited liability companies, corporations, or partnerships, including commencing bankruptcy cases for such entities or selling or otherwise disposing of such entities' assets;

(viii)  cooperate with the Plan Agent and Plan Oversight Committee and perform other duties and functions that are consistent with the implementation of the Plan to the extent not a duty or function of the Plan Agent; and

(ix)    to make demand, prosecute and settle all Causes of Action that are property of the Estate, including but not limited to Causes of Action under chapter 5 of the Bankruptcy Code.

(c)     Power of Attorney.  To the extent necessary or desirable, the Creditor Recovery Trustee shall have the authority, right and power to execute any document necessary, appropriate or advisable, in the name of the Debtor as the Debtor's attorney in fact, to carry out and implement the provisions of the Plan, liquidate Creditor Recovery Trust Assets, distribute the proceeds thereof and otherwise administer the Creditor Recovery Trust.

(d)     Preservation of Privilege and Defenses.  No action taken by the Debtor, the Creditors' Committee, the Plan Agent or the Creditor Recovery Trustee shall be (or be deemed to be) a waiver of any privilege or immunity of the Debtor, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral).  Notwithstanding the Debtor, the Creditors' Committee or the Plan Agent providing privileged information (if any) to the Creditor Recovery Trustee, the Creditor Recovery Trust, or any party or person associated with the Creditor Recovery Trust, such privileged information shall be without waiver in recognition of the joint and/or successory interest in prosecuting any Claim or Cause of Action on behalf of the Estate and shall remain privileged.  The Creditor Recovery Trustee shall seek to preserve and protect all applicable privileges and work-product relating to the claims reconciliation process and the Creditor Recovery Trust Assets, including but not limited to any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral).  The Creditor Recovery Trustee's receipt of such information shall not waive any privileges and all such privileges are preserved.

9.5.     ***Creditor Recovery Trustee's Tax Power.***

(a)     The Creditor Recovery Trustee of the Creditor Recovery Trust shall be designated as the representative of the Debtor and the Estate for all of the Creditor Recovery Trust Assets and shall have the same authority in respect of all taxes of the Debtor, and to the same extent, as if the Creditor Recovery Trustee were a trustee of the Debtor under section 1106 of the Bankruptcy Code. Accordingly, subject to the Creditor Recovery Trust Agreement, the Creditor Recovery Trustee shall prepare and file (or cause to be prepared and filed) on behalf of Debtor, all tax returns, reports, certificates, forms, or similar statements or documents (collectively, "Tax Returns") required to be filed by the Debtor or that the Creditor Recovery Trustee otherwise deems appropriate, including the filing of amended Tax Returns or requests for refunds, for all taxable periods ending on, prior to, or after the Effective Date (to the extent otherwise permitted by applicable law).

(b)     The Debtor shall cooperate fully with the Creditor Recovery Trustee regarding the implementation of Section 9.5 of the Plan and shall make available to the Creditor Recovery Trustee all reasonably requested information, records, and documents relating to taxes governed by Section 9.5 of the Plan until the expiration of the applicable statute of limitations or extension thereof or at the conclusion of all audits, appeals, or litigation with respect to such taxes. Without limiting the generality of the foregoing, to the extent necessary or desirable, the Creditor Recovery Trustee shall have the authority, right and power to execute any document necessary, appropriate or advisable, in the name of the Debtor as the Debtor's attorney in fact, authorizing the Creditor Recovery Trustee to correspond, sign, collect, negotiate, settle, and administer tax payments and tax returns for the taxable periods described in Section 9.5(a) of the Plan.

(c)     The Creditor Recovery Trustee shall have the right to request an expedited determination of the tax liability, if any, under section 505(b) of the Bankruptcy Code with respect to any tax returns filed, or to be filed, for any and all taxable periods ending after the Commencement Date.

9.6.    ***Cash Investments.***

The Creditor Recovery Trustee may invest Cash (including any earnings thereon or proceeds therefrom) transferred to the Creditor Recovery Trust; *provided* that, such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treas. Reg. § 301.77014(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

9.7.    ***Distribution of Creditor Recovery Trust Interests.***

The Creditor Recovery Trustee is required to distribute to the holders of Creditor Recovery Trust Interests, as often as the Creditor Recovery Trustee in its reasonable discretion and judgment deems appropriate, after consultation with the Plan Oversight Committee, all Available Cash, less such amounts that may be reasonably necessary to (i) meet contingent liabilities and to maintain the value of the Creditor Recovery Trust Assets during liquidation, (ii) pay reasonably incurred or anticipated expenses (including, without limitation, any taxes imposed on or payable by the Debtor or Creditor Recovery Trust or in respect of the Creditor Recovery Trust Assets), (iii) pay the fees and expenses of the Plan Agent, or (iv) satisfy other liabilities incurred or anticipated by such Creditor Recovery Trust in accordance with the Plan or Creditor Recovery Trust Agreement; *provided* that, such Creditor Recovery Trustee shall not be required to make a distribution pursuant to Section 9.7 of the Plan if such Creditor Recovery Trustee determines that the expense associated with making the distribution would likely utilize a substantial portion of the amount to be distributed, thus making the distribution impracticable.

9.8.    ***Federal Income Tax Treatment of Creditor Recovery Trust.***

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt of an adverse determination by the IRS upon audit if not contested by such Creditor Recovery Trustee), for all United States federal income tax purposes, all parties (including, without limitation, the Debtor, the Creditor Recovery Trustee and Creditor Recovery Trust Beneficiaries) shall treat the transfer of Creditor Recovery Trust Assets to the Creditor Recovery Trust as (i) a transfer of Creditor Recovery Trust Assets (subject to any obligations relating to those assets) directly to Creditor Recovery Trust Beneficiaries (other than to the extent Creditor Recovery Trust Assets are allocable to Disputed Claims), followed by (ii) the transfer by such beneficiaries to the Creditor Recovery Trust of Creditor Recovery Trust Assets in exchange for the related Creditor Recovery Trust Interests. Accordingly, except in the event of contrary definitive guidance, Creditor Recovery Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of Creditor Recovery Trust Assets (other than such Creditor Recovery Trust Assets as are allocable to Disputed Claims). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes. For the purpose of Section 9.8 of the Plan, the terms "party" and "Creditor Recovery Trust Beneficiary" shall not include the United States or any agency or department thereof, or any officer or employee thereof acting in such capacity.

9.9.    ***Tax Reporting.***

(a)    The Creditor Recovery Trustee shall file tax returns for the Creditor Recovery Trust treating such Creditor Recovery Trust as a grantor trust pursuant to Treas. Reg. § 1.6714(a) and in accordance with Section 9.9 of the Plan. The Creditor Recovery Trustee also shall annually send to each holder of a Creditor Recovery Trust Interest a separate statement regarding the receipts and expenditures of the Creditor Recovery Trust as relevant for U.S. federal income tax purposes.

(b)    Allocations of Creditor Recovery Trust taxable income among Creditor Recovery Trust Beneficiaries (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims, if such income is otherwise taxable at the Creditor Recovery Trust) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Creditor Recovery Trust had distributed all its assets (valued at their tax book value, other than, if applicable, assets allocable to Disputed Claims) to the holders of Creditor Recovery Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Creditor Recovery Trust. Similarly, taxable loss of the Creditor Recovery Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Creditor Recovery Trust Assets. The tax book value of Creditor Recovery Trust Assets for purpose of this paragraph shall equal their fair market value on the date Creditor Recovery Trust Assets are transferred to the Creditor Recovery Trust, adjusted in accordance with tax accounting principles prescribed by the Internal Revenue Code of 1986, as amended (the **"IRC"**), the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(c)    As soon as reasonably practicable after Creditor Recovery Trust Assets are transferred to the Creditor Recovery Trust, the Creditor Recovery Trustee shall make a good faith valuation of Creditor Recovery Trust Assets. Such valuation shall be made available from time to time to all parties to the Creditor Recovery Trust (including, without limitation, the Debtor, Plan Agent and Creditor Recovery Trust Beneficiaries), to the extent relevant to such parties for tax purposes, and shall be used consistently by such parties for all United States federal income tax purposes.

(d)    Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Creditor Recovery Trustee of a private letter ruling if such Creditor Recovery Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by such Creditor Recovery Trustee), such Creditor Recovery Trustee (i) may timely elect to treat any Creditor Recovery Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treas. Reg. § 1.468B-9, and (ii) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including such Creditor Recovery Trustee, the Debtor and Creditor Recovery Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(e)     The Creditor Recovery Trustee shall be responsible for payment, out of the respective Creditor Recovery Trust Assets, of any taxes imposed on the respective Creditor Recovery Trust or its assets.

(f)     The Creditor Recovery Trustee may request an expedited determination of taxes of the Creditor Recovery Trust, including any reserve for Disputed Claims, or of the Debtor as to whom the Creditor Recovery Trust was established, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, such Creditor Recovery Trust or the Debtor for all taxable periods through the dissolution of such Creditor Recovery Trust.

### 9.10.   *Costs and Expenses of Creditor Recovery Trust.*

As more fully set forth in and subject to the Creditor Recovery Trust Agreement and the review of the Plan Oversight Committee as set forth in Section 5.4 above, the costs and expenses of the Creditor Recovery Trust, including, without limitation, the reasonable fees and expenses of the Creditor Recovery Trustee and its retained professionals, and the fees and expenses incurred in connection with the prosecution and settlement of any Claims or Causes of Action, shall be paid out of the Creditor Recovery Trust Assets.

### 9.11.   *Dissolution.*

(a)     The Creditor Recovery Trustee and Creditor Recovery Trust shall be discharged or dissolved, as the case may be, at such time as (i) all of the Creditor Recovery Trust Assets have been distributed pursuant to the Plan and the Creditor Recovery Trust Agreement, (ii) the Creditor Recovery Trustee determines, in its sole discretion, that the administration of any remaining Creditor Recovery Trust Assets is not likely to yield sufficient additional Creditor Recovery Trust proceeds to justify further pursuit and elects not to administer such Creditor Recovery Trust Assets, or (iii) all distributions required to be made by the Creditor Recovery Trustee under the Plan and the Creditor Recovery Trust Agreement have been made; *provided* that, in no event shall the Creditor Recovery Trust be dissolved later than three years from the creation of such Creditor Recovery Trust pursuant to Section 9 of the Plan unless the Bankruptcy Court, upon motion within the six-month period prior to the Creditor Recovery Trust's third anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Creditor Recovery Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Creditor Recovery Trust Assets.

(b)     If at any time the Creditor Recovery Trustee determines, in its sole discretion, that the administration of any remaining Creditor Recovery Trust Assets is not likely to yield sufficient additional Creditor Recovery Trust proceeds to justify further pursuit and elects not to administer such Creditor Recovery Trust Assets, or if all distributions required to be made by the Creditor Recovery Trustee under the Plan and the Creditor Recovery Trust Agreement, including without limitation distributions on account of Post-Petition Interest on General Unsecured Claims, have been made, then the Creditor Recovery Trustee may reserve any

amount necessary to dissolve such Creditor Recovery Trust and thereafter dissolve such Creditor Recovery Trust. Any Creditor Recovery Trust Assets not liquidated or otherwise administered by the Creditor Recovery Trustee, and any excess Creditor Recovery Trust Assets remaining after all distributions have been made, including without limitation distributions of Post-Petition Interest on Claims, shall revert to the Debtor.

## SECTION 10. CONDITIONS PRECEDENT TO EFFECTIVE DATE.

### 10.1. *Conditions Precedent to Effective Date.*

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a) the Bankruptcy Court shall have entered the Confirmation Order, the Confirmation Date shall have occurred and the Confirmation Order shall not be subject to any stay;

(b) The Plan Agent Agreement shall have been signed and delivered:

(c) The Creditor Recovery Trust shall have been formed and the Creditor Recovery Trust Agreement signed and delivered;

(d) all actions, documents and agreements necessary to implement and consummate the Plan, including, without limitation, entry into the documents contained in the Plan Supplement, and the transactions and other matters contemplated thereby, shall have been effected or executed; and

(e) all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

### 10.2. *Waiver of Conditions Precedent.*

Each of the conditions precedent in Section 10.1 of the Plan other than the condition set forth in Sections 10.1(b) and (c) of the Plan may be waived in writing by the Creditors' Committee.

### 10.3. *Effect of Failure of Conditions to Effective Date.*

Unless otherwise extended by the Creditors' Committee, if the Effective Date does not occur on or before _____2019 or if the Confirmation Order is vacated, (i) no distributions under the Plan shall be made, (ii) the Creditors' Committee and all holders of Claims shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iii) all obligations with respect to the Claims shall remain unchanged and nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Creditors' Committee or any other entity or to prejudice

in any manner the rights of the Debtor or any other entity in any further proceedings involving the Debtor or otherwise.

SECTION 11. **EFFECT OF CONFIRMATION.**

### 11.1. *Vesting of Assets.*

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Estate shall vest in the Creditor Recovery Trust free and clear of all Claims, liens, encumbrances, charges and other interests, except as provided pursuant to the Plan and the Confirmation Order; no Estate assets shall vest in the Debtor, except for any assets that the Creditor Recovery Trustee elects not to accept as Creditor Recovery Trust Assets as set forth more fully in Section 5.1 of this Plan.

### 11.2. *Release of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, and compromised and all rights, titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be deemed conveyed to the Creditor Recovery Trust.

### 11.3. *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Creditors' Committee reserves the right for the Creditor Recovery Trustee to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto.

### 11.4. *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the Plan shall bind the Debtor and any holder of a Claim against the Debtor, and such holder's respective successors and assigns, whether or not the Claim of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

### 11.5. *Discharge of Claims.*

Except as otherwise provided in the Plan, effective as of the Effective Date: (i) the rights afforded in the Plan and the treatment of all Claims shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of his assets, property or Estate; (ii) all Claims shall be satisfied, discharged and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of

the kind specified under section 502(g) of the Bankruptcy Code; and (iii) except as otherwise provided in the Plan or any judgment or order of the Bankruptcy Court, all Entities shall be precluded from asserting against the Debtor, the Estate, the Plan Agent or the Creditor Recovery Trustee, their successors and assigns and their assets and properties, any other Claims based upon any documents, instruments or any act or omission, transaction or other activity of any kind or nature that occurred before the Effective Date. Notwithstanding any of the foregoing, in accordance with Bankruptcy Code section 1141: (i) the Debtor shall not be discharged and released from any Claims until the Court grants a discharge on completion of all payments under the Plan; and (b) the Debtor shall not be discharged from Claims that are nondischargable under Bankruptcy Code section 523.

### 11.6. *Term of Injunctions or Stays.*

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date, if any, indicated in the order providing for such injunction or stay.

### 11.7. *Reservation of Causes of Action/Reservation of Rights.*

(a) Except as provided in Sections 11.9 and 11.11 of the Plan, nothing contained in the Plan (including in Section 6.6 of the Plan or in the Confirmation Order) shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action of the Creditors' Committee, the Debtor or the Estate under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtor, the Estate or the Creditor Recovery Trust, (ii) any rights to seek substantive consolidation of the Debtor and/or the Estate with any other Person or Entity, and (iii) the turnover of any property of the Debtor's Estate.

(b) Except as set forth in Sections 11.9 and 11.11 of the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any right, Claim or Cause of Action, which the Creditors' Committee, Debtor or the Debtor's Estate had immediately prior to the Effective Date. The Creditor Recovery Trust, to the extent established, shall retain, reserve, and be entitled to assert all rights, Claims and Causes of Action, and all of the legal and equitable rights of the Debtor or the Debtor's Estate respecting any Claim left Unimpaired by the Plan that may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.

### 11.8. *Causes of Action/Avoidance Actions/Objections*

Other than any releases granted herein, in the Confirmation Order or in a Final Order of the Bankruptcy Court from and after the Effective Date, the Creditor Recovery Trustee shall have the right to prosecute any and all Causes of Action and objections to Claims under sections 105, 502, 510, 542 through 551, and 553 of the Bankruptcy Code or other applicable law that belong to the Debtor or the Debtor's Estate.

11.9. *Release by Debtor.*

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, AS OF THE EFFECTIVE DATE, THE RELEASED PARTIES ARE DEEMED RELEASED AND DISCHARGED BY THE DEBTOR, HIS ESTATE AND ANY PERSON OR ENTITY SEEKING TO EXERCISE THE RIGHTS OF THE DEBTOR OR HIS ESTATE AND THEIR RESPECTIVE PROPERTY (AND EACH SUCH RELEASED PARTY SHALL BE DEEMED RELEASED BY THE DEBTOR AND HIS ESTATE AND THEIR RESPECTIVE PROPERTY) FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, OTHER RIGHTS, AND LIABILITIES WHATSOEVER, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, AVOIDANCE ACTIONS, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED DIRECTLY OR INDIRECTLY, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, AND ANY AND ALL CAUSES OF ACTION ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED, BASED ON OR IN ANY WAY RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, HIS ESTATE OR AFFILIATES, THE CONDUCT OF THE DEBTOR'S BUSINESS, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, THIS PLAN, OR THE FILING AND PROSECUTION OF THE CHAPTER 11 CASE, THE PURSUIT OF CONSUMMATION OF THIS PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR AND HIS AFFILIATES, ON THE ONE HAND, AND ANY RELEASED PARTY, ON THE OTHER HAND, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE; PROVIDED THAT, TO THE EXTENT THAT A CLAIM OR CAUSE OF ACTION IS DETERMINED BY A FINAL ORDER TO HAVE RESULTED FROM FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF A RELEASED PARTY, SUCH CLAIM OR CAUSE OF ACTION SHALL NOT BE SO RELEASED AGAINST SUCH RELEASED PARTY; PROVIDED FURTHER THAT, THE FOREGOING "DEBTOR RELEASE" SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS OR CAUSES OF ACTION OF THE DEBTOR OR THE CHAPTER 11 ESTATE AGAINST A RELEASED PARTY (OR OF A RELEASED PARTY AGAINST THE DEBTOR AND HIS ESTATE) ARISING UNDER**

**ANY CONTRACTUAL OBLIGATION OWED TO THE DEBTOR THAT IS ENTERED INTO OR ASSUMED PURSUANT TO THE PLAN.**

11.10. *Releases by Holders of Claims.*

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, AS OF THE EFFECTIVE DATE, THE RELEASING PARTIES SHALL BE DEEMED TO PROVIDE A FULL RELEASE TO THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, OTHER RIGHTS, AND LIABILITIES WHATSOEVER, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, AVOIDANCE ACTIONS, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED DIRECTLY OR INDIRECTLY, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, AND ANY AND ALL CAUSES OF ACTION ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED, BASED ON OR IN ANY WAY RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, HIS ESTATE OR HIS AFFILIATES, THE CONDUCT OF THE DEBTOR'S BUSINESS, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, THIS PLAN, THE FILING AND PROSECUTION OF THE CHAPTER 11 CASE, THE PURSUIT OF CONSUMMATION OF THIS PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE RELEASING PARTIES, ON THE ONE HAND, AND ANY RELEASED PARTY, ON THE OTHER HAND, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE; PROVIDED THAT, TO THE EXTENT THAT A CLAIM OR CAUSE OF ACTION IS DETERMINED BY A FINAL ORDER TO HAVE RESULTED FROM FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF A RELEASED PARTY, SUCH CLAIM OR CAUSE OF ACTION SHALL NOT BE SO RELEASED AGAINST SUCH RELEASED PARTY.**

11.11. *Exculpation.*

The Exculpated Parties shall neither have, nor incur any liability to any Person or Entity for any prepetition or postpetition act taken or omitted to be taken in connection with the Chapter 11 Case, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, or implementing the Plan or consummating the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection

with or in contemplation of the restructuring or liquidation of the Debtor; *provided* that, each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement. Without limiting the foregoing "Exculpation" provided under Section 11.11 of the Plan, the rights of any holder of a Claim to enforce rights arising under the Plan shall be preserved, including the right to compel payment of distributions in accordance with the Plan.

### 11.12. *Injunction.*

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, ALL PERSONS OR ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR CAUSES OF ACTION AGAINST THE DEBTOR AND HIS ESTATE ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ANY SUCH CLAIM AGAINST THE CREDITOR RECOVERY TRUST AND/OR THE RELEASED PARTIES, (II) THE ENFORCEMENT, ATTACHMENT, COLLECTION OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE CREDITOR RECOVERY TRUST AND/OR THE RELEASED PARTIES WITH RESPECT TO SUCH CLAIM, (III) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE CREDITOR RECOVERY TRUST AND/OR THE RELEASED PARTIES OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE CREDITOR RECOVERY TRUST AND/OR THE RELEASED PARTIES WITH RESPECT TO SUCH CLAIM, (IV) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE TO THE DEBTOR OR THE CREDITOR RECOVERY TRUST AND/OR THE RELEASED PARTIES OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DEBTOR OR THE CREDITOR RECOVERY TRUST AND/OR THE RELEASED PARTIES WITH RESPECT TO SUCH CLAIM, EXCEPT AS CONTEMPLATED OR ALLOWED BY THE PLAN, (V) ACTING OR PROCEEDING IN ANY MANNER IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN, (VI) COMMENCING, CONTINUING, OR ASSERTING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CLAIMS WHICH ARE EXTINGUISHED OR RELEASED PURSUANT TO THE PLAN, AND (VII) TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN. SUCH INJUNCTION SHALL EXTEND TO ALL PERSONS PROTECTED BY THE DISCHARGE, RELEASE AND EXCULPATION PROVISIONS OF THE PLAN AND THE CONFIRMATION ORDER, AS WELL AS TO THE SUCCESSORS OF SUCH PERSONS AND TO THE RESPECTIVE PROPERTY AND INTERESTS IN PROPERTY OF SUCH PERSONS.**

### 11.13. *Waiver of Statutory Limitation on Releases.*

**EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THIS PLAN (INCLUDING UNDER SECTION 11 OF THE PLAN) EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR**

SUSPECT TO EXIST IN ITS OR THEIR FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, SUCH RELEASING PARTY HAS CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY. THE RELEASES CONTAINED IN <u>SECTION 11</u> OF THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.

### 11.14. *Solicitation of Plan.*

As of and subject to the occurrence of the Confirmation Date: (i) the Creditors' Committee shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation; and (ii) the Creditors' Committee and each member of the Creditors' Committee and each of their respective directors, officers, employees, Affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan (if any), and therefore, are not, and on account of such offer, issuance and solicitation will not be, liable at any time for any violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan (in each case, if applicable).

### 11.15. *Plan Supplement.*

The Plan Supplement shall be filed with the Clerk of the Bankruptcy Court by no later than five days before the Voting Deadline. Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.

## SECTION 12. **RETENTION OF JURISDICTION.**

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Case for, among other things, the following purposes:

(a) to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, classification, priority, compromise, estimation or payment of Claims resulting therefrom;

(b)        to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(c)        to ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(d)        to consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim;

(e)        to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(f)        to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the Consummation, implementation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)        to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)        to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date;

(i)        to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)        to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan, the Confirmation Order or any agreement, instrument, or other document governing or relating to any of the foregoing, or to maintain the integrity of the Plan and such documents following Consummation;

(k)        to hear any disputes arising out of, and to enforce, any order approving alternative dispute resolution procedures to resolve personal injury, employment litigation and similar Claim pursuant to section 105(a) of the Bankruptcy Code;

(l)        to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)        to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code

(including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n)     to adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(o)     to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(p)     to hear and determine any other matters related to the Plan and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(q)     to enter a final decree closing the Chapter 11 Case;

(r)     to enforce all orders previously entered by the Bankruptcy Court;

(s)     to recover all assets of the Debtor and property of the Estate, and Creditor Recovery Trust Assets wherever located;

(t)     to aid the Creditors' Committee, the Plan Agent, the Creditor Recovery Trustee and/or the Plan Oversight Committee, as the case may be, in obtaining turnover by the Debtor of all assets of the Estate and all books and records required to be turned over under the Plan; and

(u)     to hear and determine any rights, Claims or Causes of Action held by or accruing to the Creditors' Committee, Debtor or the Estate or the Creditor Recovery Trustee pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

## SECTION 13. **MISCELLANEOUS PROVISIONS.**

### 13.1. *Payment of Statutory Fees.*

On the Effective Date and thereafter as may be required, the Creditor Recovery Trust shall pay all fees incurred pursuant to § 1930 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for each Debtor's case.

### 13.2. *Substantial Consummation.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 13.3. *Dissolution of Creditors' Committee.*

On the Effective Date, the Creditors' Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Case; provided that, after the Effective Date, the Creditors' Committee shall exist and

its professionals shall continue to be retained and shall continue to be entitled to reasonable compensation to be paid by the Creditor Recovery Trust without the need for further application to the Bankruptcy Court with respect to (i) all applications filed pursuant to sections 330 and 331 of the Bankruptcy Code and any related hearings; (ii) pending appeals of the Confirmation Order; and (iii) the execution and delivery of the Plan Agent Agreement; *provided further* that, the Bankruptcy Court shall retain jurisdiction with respect to any disputes over the reasonableness of fees.

13.4. ***Post-Confirmation Compensation of the Debtor and Debtor's Professionals.***

On and after the Confirmation Date, except for reasonable fees and expenses incurred in connection with the Debtor's performance of his obligations set forth in Section 5.4 of this Plan to cooperate with the Plan Agent to effectuate the automatic transfer of all Estate property to the Creditor Recovery Trust, neither the Debtor nor the Debtor's professionals shall be entitled to any compensation from the Estate and/or the Creditor Recovery Trust, including without limitation reimbursement for professional fees and expenses.

13.5. ***Amendments.***

(a) *Plan Modifications*. The Creditors' Committee or the Plan Oversight Committee, as the case may be, may amend, modify or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, the Creditors' Committee or the Plan Oversight Committee, as the case may be, may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Confirmation Order and/or the Plan Supplment, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

(b) *Other Amendments*. Before the Effective Date, the Creditors' Committee may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

13.6. ***Revocation or Withdrawal of Plan.***

The Creditors' Committee reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Creditors' Committee revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims; (b) prejudice in any manner the rights of the Debtor, the Creditors' Committee, the Estate, or any other Person or Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Creditors' Committee, Debtor, the Estate, or any other Person or Entity.

### 13.7. *Severability of Plan Provisions upon Confirmation.*

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Creditors' Committee, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Creditors' Committee or the Plan Agent (as the case may be); and (iii) nonseverable and mutually dependent.

### 13.8. *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan or a schedule in the Plan Supplement provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 13.9. *Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth in the Plan or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 13.10. *Additional Documents.*

On or before the Effective Date, the Creditors' Committee, Plan Agent and Creditor Recovery Trustee, may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Creditors' Committee, Plan Agent and Creditor Recovery Trustee and all holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 13.11. *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor, the Creditors' Committee, the holders of Claims, the Released Parties, the Exculpated

Parties, and each of their respective successors and permitted assigns, including, without limitation, the Plan Agent and the Creditor Recovery Trustee.

### 13.12. *Successor and Assigns.*

The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, Agent, successor or permitted assign, if any, of each Person or Entity.

### 13.13. *Entire Agreement.*

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

### 13.14. *Notices.*

All notices, requests and demands to or upon the Creditors' Committee to be effective shall be in writing (including by electronic transmission) and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when sent, addressed as follows:

(i)  if to the Debtor:

> Robert F.X. Sillerman
> 352 Plain Road
> Hinsdale, NH  03451
> Email:  one@rfxs1.com
>
> - and –
>
> Rosen & Associates, P.C.
> 747 Third Avenue
> New York, NY  10017-2803
> Attn:  Sanford Rosen, Esq.
> Email:  srosen@rosenpc.com

(ii)  if to the Creditors' Committee:

> CULLEN AND DYKMAN LLP
> 100 Quentin Roosevelt Blvd.
> Garden City, New York 11530
> Telephone: (516) 357-3700
> Attn:   Thomas R. Slome, Esq.
>       Jil Mazer-Marino, Esq.
>       Elizabeth Aboulafia, Esq.
> tslome@cullenanddykman.com
> jmazermarino@cullenanddykman.com
> eaboulafia@cullenanddykman.com

(iii)  if to the Plan Agent:

[To be supplied]

(iv) if to the Creditor Recovery Trustee:

[To be supplied]

(v) if to the Plan Oversight Committee:

[To be supplied]

Any of the foregoing parties may change their respective notice information by providing notice to the other parties in the manner set forth above.

Dated:  August 30, 2019

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

ID Wheel (FL) LLC, solely in its capacity as
Member of the Committee and not in
any individual capacity

By:      */s/ Chris Hayes*
      Name: Chris Hayes
      Title: Executive Director

VistaJet US, Inc., solely in its capacity as
Member of the Committee and not in
any individual capacity

By:      */s/ Lauren Amato*
      Name: Lauren Amato
      Title: Billing Coordinator

**CULLEN AND DYKMAN LLP**

By:      */s/ Thomas R. Slome*
      Thomas R. Slome
      Jil Mazer-Marino
      Elizabeth Aboulafia
100 Quentin Roosevelt Boulevard
Garden City, New York 11530-4850
(516) 357-3700

*Counsel to the Official Committee of Unsecured Creditors*

1772461