**ROSEN & ASSOCIATES, P.C.**
*Counsel to the Debtor and Debtor
  in Possession*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Paris Gyparakis

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Robert Francis Xavier Sillerman<br>*aka* Robert F.X. Sillerman,<br>*aka* Robert F. Sillerman,<br>*aka* Robert X. Sillerman,<br><br>        Debtor. | Chapter 11<br><br>Case No. 17-13633 (MKV) |

**DEBTOR'S DECLARATION (I) IN FURTHER SUPPORT OF DEBTOR'S RESPONSE
IN OPPOSITION TO COMMITTEE'S MOTION FOR ORDER APPOINTING A
CHAPTER 11 TRUSTEE OR CONVERTING CASE TO CHAPTER 7; AND (II) IN
SUPPORT OF DEBTOR'S REPLY TO COMMITTEE'S OBJECTION TO DEBTOR'S
<u>MOTION FOR ORDER APPROVING DIP LOAN EXPENSE REIMBURSEMENT</u>**

    **Robert F.X. Sillerman**, under penalty of perjury, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

    1.  I am the debtor and debtor-in-possession in the above-captioned chapter 11 case.

    2.  I submit this declaration in further support of my response (the "**Response**") in opposition to the *Official Committee of Unsecured Creditors' Motion Pursuant to Bankruptcy Code Sections 1104(A) and 1112(B) for Order Appointing a Chapter 11 Trustee Or Converting Case to a Chapter 7 Case* [Doc. No. 404] (the "**Trustee Motion**"), and in support of my reply (the

"**Reply**")[1] to the *Official Committee of Unsecured Creditors' Objection to Debtor's Motion for an Order Authorizing (A) Debtor to Incur Debt Pursuant to 11 U.S.C. § 364 Secured by a Senior Lien on Certain Estate Property and With Priority Over All Administrative Expenses of the Kind Specified in 11 U.S.C. § 503(B) or 507(D); and (B) Payment of Expense Deposit to Proposed Lender* [Doc. No. 420] (the "**Objection**").

3. The Committee has made it clear that it does not want me to pursue the DIP Loan, which is the cornerstone of my plan. The Committee goes further to raise specious arguments in its Objection to the Expense Motion. However, it does so without exploring how the DIP Loan would be profoundly beneficial to the estate. Its reason for not exploring the substantial benefits the DIP Loan will provide, is because the Committee knows the DIP loan would not be available in the event that a trustee is appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

4. As discussed below, in order to realize the substantial benefits of the DIP Loan, the Court must deny the Trustee Motion.

**Immediate Benefit to the Estate**

5. First, the proposed DIP Loan, together with the settlement agreements with ESFX and Iliad and the agreement for the development of the Anguilla project, provides an immediate benefit to the estate of $17,140,000. Of this amount, $5,300,000 represents the reduction of secured debt owed to ESFX, and $3,400,000 represents the reduction of secured debt owed to Iliad. Separately, under the terms of my plan, $7,000,000 of secured debt owed to OPW LLC would also be eliminated. The remaining $1,440,000, constitutes the amount of DIP Loan proceeds that will become immediately available to the estate at closing.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Reply.

2

**Increase in Estate Net Asset Value**

6. Second, it is irrefutable that the DIP Loan will enable the estate to benefit from a substantial increase in net asset value.

7. As indicated in its response in support of the Expense Motion [Doc. No. 424], ESFX has agreed to the proposed settlement because it represents the best agreement they can reach. Indeed, if foreclosed on by ESFX and Iliad, the PE Funds would not only yield no value for the estate, but would result in ESFX and Iliad holding substantial deficiency claims. On the other hand, the DIP Loan, coupled with the agreements with ESFX and Iliad, will enable the estate to maximize value in an orderly way and timely repay the DIP Loan, allowing the proceeds of the Yankees Interests to inure to the benefit of the estate.

8. The Yankees Interests alone is worth $8,000,000 – $12,000,000, which is the range of value the Committee has ascribed to it in its disclosure statement with respect to its plan. Such value would be forfeited in the event of ESFX's foreclosure.

9. The DIP Loan also paves the way to my participation in the Anguilla project, which is a mandatory component of the DIP Loan collateral. Under my plan, I will acquire the Anguilla property in consideration of the assumption of the debt secured thereby and will hold the estate harmless from such secured claim. Without the DIP Loan, the estate would realize only the value of the undeveloped Anguilla property, worth approximately $2,000,000 and subject to the $7,000,000 secured claim of OPW LLC.

10. In sum, the secured debt reduction of $15,700,000, the avoidance of a minimum of $13,700,000 of undersecured deficiency claims and the provision of $1,440,000 to the estate, creates a minimum of $30,840,000 of value to the estate. This value cannot be realized if a chapter 7 or chapter 11 trustee is appointed, as the DIP Loan cannot be made under those circumstances. In addition, consummating the DIP Loan and the settlements with ESFX and Iliad

will enable the estate, and not the secured creditors, to liquidate the property that constitutes the DIP Loan collateral. Having the time to orderly liquidate such collateral will enable the estate to timely repay the DIP Loan to Metropolitan and yield substantial value that would otherwise be forfeited in foreclosure.

**The DIP Loan Is Not Expensive**

11. Finally, while the Committee goes to great length to describe the DIP Loan as "expensive," that is in fact wrong. The DIP Loan is for about $15,700,000. A minimum of $1,150,000 would be due in interest, assuming the DIP Loan closes on or about October 31, 2019 and is repaid by April 30, 2020. The Committee's view that I will default is simply idle speculation and inconsistent with not only standard business practices, but also the economics of the transaction itself. If that was true, I would not have agreed to these terms of the DIP Loan. Most importantly, Metropolitan would not have agreed to place its own money at risk and make the DIP Loan.

12. Out of the Huff Energy Fund and the Yankees Interests, both of which would collateralize the DIP Loan, $16,850,000 would be necessary to pay off the DIP Loan by April 30, 2020. Any value realized in excess of $16,850,000 would inure to the benefit of the estate, in addition to the minimum projected benefit of $30,840,000, which would also not be available if a chapter 7 or chapter 11 trustee was appointed.

13. Moreover, the minimum projected benefit of $30,840,000, assumes that ESFX would recover $15,000,000 and Iliad would recover $5,500,000. Recoveries of any less than that would further dilute the dividend to general unsecured creditors.

14. The Committee also overstates the cost of the DIP Loan and suggests that it is possible that $250,000 of expenses will be incurred and paid, yet I will not obtain a commitment. That's also not true.

15. The Expense Motion only seeks the approval of an initial $75,000 deposit. The initial expenses will cover due diligence to be performed before the process advances to the preparation of definitive loan documentation. Once a commitment is issued, expenses will relate to preparation of the loan documentation, closing and monitoring. I believe that if Metropolitan decides not to issue a commitment, the total expenses associated with due diligence will be between $75,000 - $100,000 at most. I believe the fees and expenses are fair and reasonable under the circumstances.

16. Subtracting only the cash the estate will receive at closing, the cash on cash cost of the loan to the estate is approximately 10%. And when the loan closes, the secured debt reduction of $15,700,000 is permanently eliminated. Only in the event of a default would the interest rate rise to 20.25%. That's slightly more than $3,00,000 a year. Therefore, in the event of a default at the end of the first year, the estate will have secured debt of $18,700,000 versus the current $36,000,000 plus a year's worth of additional accrued interest owed to existing secured creditors. That permanent reduction, which is a worst-case scenario, is only available if the DIP Loan closes; and the DIP Loan cannot close if a chapter 7 or 11 trustee is appointed.

17. Based on the foregoing and for the reasons outlined in the Reply and Response, I respectfully request that the Trustee Motion be denied and the Expense Motion be granted.

Dated: September 23, 2019
      New York, New York

                                          */s/ Robert F.X. Sillerman*
                                            Robert F.X. Sillerman