| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: October 10, 2019<br>Hearing Time: 10:00 a.m. |

In re:

ROBERT FRANCIS XAVIER SILLERMAN
aka Robert F.X. Sillerman,
aka Robert F. Sillerman,
aka Robert X. Sillerman,

                         Debtor.

Case No. 17-13633(MKV)
Chapter 11

## OBJECTION OF THE U.S. SECURITIES AND EXCHANGE COMMISSION TO THE ADEQUACY OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE CHAPTER 11 PLAN

The U.S. Securities and Exchange Commission (the "SEC")[1] respectfully files this objection to the adequacy of the First Modified Disclosure Statement with Respect to Debtor's First Modified Plan of Reorganization, dated September 16, 2019 ("Disclosure Statement") and confirmation of the Debtor's Plan of Reorganization, dated September 16, 2019 ("Plan") for Robert Sillerman ("Sillerman" or the "Debtor"). In support of its objection (the "Objection"), the SEC respectfully represents as follows:

## INTRODUCTION

An involuntary Chapter 7 bankruptcy petition was filed against Sillerman on December 27, 2017. On March 1, 2018, upon Sillerman's motion to convert his Chapter 7 case to a Chapter 11 case, the Court converted the case to Chapter 11. The Debtor is a defendant in *SEC v. Sillerman*, case no. 19-cv-6052 (S.D.N.Y.). Based on the Final Judgment entered in *SEC v. Sillerman*, the SEC is a creditor of the Debtor. The SEC

---

[1] The SEC has standing to participate in these proceedings pursuant to Bankruptcy Code Section 1109(a) and (b).

1

objects to approval of the Disclosure Statement because it: (i) lacks adequate information, as required by Section 1125(b) of the Bankruptcy Code, that would enable creditors to make an informed judgment as to whether the Plan is feasible, as required by Section 1129(a)(11) of the Bankruptcy Code; (ii) lacks the factual and legal basis to determine if the Debtor can distribute securities pursuant to the Plan; (iii) describes a Plan that fails to provide that the SEC's claim against the Debtor is nondischargeable pursuant to Sections 523(a)(19) and 1141(d)(2) of the Bankruptcy Code; and (iv) describes a Plan that contains overbroad discharge, injunction and release provisions that are not supported by the facts or the law. Accordingly, the Court should not approve the Disclosure Statement and must deny confirmation of the Plan.

## BACKGROUND

The SEC conducted an investigation into certain pre-bankruptcy transactions and practices involving Function(x) and Mr. Sillerman. Mr. Sillerman was the former CEO of Function (x). Function(x) has ceased operating, and on November 15, 2018, the SEC issued an Order Instituting Proceedings pursuant to Section 12(j) of the Securities and Exchange Act of 1934, Making Findings, and Revoking the Registration of the securities of Function(x), effective as of November 16, 2018. In March 2019, the Debtor made an offer of settlement to the SEC Staff with respect to certain pre-bankruptcy transactions and practices involving Mr. Sillerman and Function(x). The SEC accepted Mr. Sillerman's offer of settlement. On June 28, 2019, the SEC filed its Complaint against Sillerman in the U.S. District Court for the Southern District of New York (the "District Court"). With the Complaint, the SEC filed the Consent of Defendant Robert F.X.

Sillerman ("Consent"), and Proposed Final Judgment. On July 2, 2019, the District Court entered the Final Judgment in *SEC v. Sillerman*, case no. 19-cv-6052. [2]

The Final Judgment provides that Mr. Sillerman is permanently restrained and enjoined from violating the antifraud provisions, books and records and internal accounting control provisions of the federal securities laws, which includes Section 10(b) of the Securities and Exchange Act of 1934 (the Exchange Act) and Rule 10b-5 promulgated thereunder; Section 17(a) of the Securities Act of 1933 (the Securities Act), and Section 13(b)(5) of the Exchange Act as described in Section 13(b)(2)(A) of the Exchange Act and Rule 13b2-1 promulgated thereunder. Sillerman is also permanently restrained and enjoined from aiding and abetting any violation of a company's reporting obligations under Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-11 thereunder. Further, Mr. Sillerman is prohibited permanently from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act. The Final Judgment also provides that Sillerman will pay the SEC $179,000 pursuant to a confirmed Chapter 11 plan in Sillerman's Chapter 11 case. On July 24, 2019, the SEC filed an amended proof of claim for $179,000 based on the Final

---

[2] Pursuant to Sillerman's Consent to the Final Judgment in *SEC v. Sillerman*, Sillerman agreed that he "will not take any action or make or permit to be made any public statement denying, directly or indirectly any allegation in the complaint or creating the impression that the complaint is without factual basis[.]" Therefore, pursuant to the Consent and Final Judgment, Sillerman must delete the statement on page 12 of the Disclosure Statement, which states that "[t]he Debtor, though confident in his defense of the claims, has not had the time or financial resources to underwrite the litigation of his defenses."

Judgment entered by the District Court. Therefore, the SEC is seeking a distribution of its general unsecured claim through the Chapter 11 plan.

According to the Disclosure Statement and Plan, general unsecured creditors will get approximately a 30% distribution on their claims. *Disclosure Statement* at 4. Any amount that is not paid to the SEC pursuant to a confirmed Chapter 11 plan, would not be discharged and is due from Sillerman within 14 days of the closing the bankruptcy case, the order dismissing the bankruptcy case or the termination of or lifting of the automatic stay.[3]

According to the Disclosure Statement on pages 1-4 and 26-31, funding for the Plan depends on the Debtor entering into a debtor-in-possession financing facility with Metropolitan Partners Group (Metropolitan) for approximately $15.7 million and the debtor-in-possession financing being approved by the Bankruptcy Court; the transfer of certain assets with estimated values, from $2.5 million to $5.5 million, by the Debtor to secured creditors; and the investment in the Debtor's interest in certain real property in Anguilla, which the Debtor estimates has a value of $2 million and secured debt of approximately $7 million. *Id.* at 1-2. The information that is in the Disclosure Statement is speculative and the Disclosure Statement does not include adequate information to allow creditors, including the SEC, to determine if the Plan is feasible.

---

[3] The Debtor proposes to separately classify the SEC's claim and to pay the SEC's general unsecured claim in full. The Debtor must disclose what funds he will use to pay the SEC's claim, the basis for the use of those funds, the specific timing of payment, and clarify that any amount not paid pursuant to the Plan will not be discharged and still owed by Sillerman.

4

# OBJECTION

The SEC's specific objections to approval of the Disclosure Statement and confirmation of the Plan, which are set forth in more detail below, are the following:

(i) The Disclosure Statement should not be approved because it describes a Plan that cannot be confirmed;

(ii) The Plan is not feasible;

(iii) The Disclosure Statement and Plan do not give the factual and legal basis to distribute securities pursuant to the Plan;

(iv) The Plan contains overbroad discharge, injunction, and release provisions in violation of Sections 523(a)(19); 524(e); 1141(d)(2).

## I. The Disclosure Statement Should Not be Approved Because it Describes a Plan that Cannot be Confirmed

Where a Debtor files a patently unconfirmable plan, the disclosure statement relating to that plan should not be approved and the plan's inadequacies should be addressed at the disclosure statement stage to avoid wasting estate and judicial resources. *See In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992) (disapproving disclosure statement because plan contained provisions that were patently unconfirmable); *In re Eastern Maine Electric Cooperative, Inc.*, 125 B.R. 329, 333 (Bankr. D. Me. 1991) (disapproving disclosure statement); *see also In re McCall*, 44 B.R. 242, 243-44 (Bankr. E.D. Pa. 1984); *In re Main Street AC, Inc.*, 234 B.R. 771, 775 - 776 (Bankr. N.D. Cal. 1999). In this case, the Plan cannot be confirmed because the Plan is not feasible and includes overbroad discharge, injunction and release provisions in violation of the law.

## II. The Disclosure Statement Should Not be Approved Because it Fails to Disclose Adequate Information to Determine if the Plan is Feasible Under 11 U.S.C. §1129(a)(11)

Section 1125(b) of the Bankruptcy Code provides, in relevant part, that "[a]n acceptance or rejection of a plan may not be solicited ... from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder ... a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). In addition, a disclosure statement should clearly and succinctly inform the average unsecured creditor "what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *See In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

Section 1129(a)(11) of the Bankruptcy Code requires that a plan "is not likely to be followed by the liquidation or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. §1129(a)(11). In particular, the Debtor must present credible evidence in order for the Court to determine that the plan is feasible. *Pan Am Corp. v. Delta Air lines, Inc.*, 175 B.R. 438, 508 (S.D.N.Y. 1994) ("[t]o establish feasibility, the debtor must present 'proof through reasonable projections that there will be sufficient cash flow to fund the plan and maintain operations according to the plan. Such projections cannot be speculative, conjectural or unrealistic.'"). This basic information is necessary for the approval of the Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code.

While a debtor does not have to guarantee the success of its reorganized business, the debtor does have to show that there is a reasonable likelihood of success. *See In re Trigona*, 2009 Bankr. LEXIS 5545 at *9 (Bankr. W.D.Pa. 2009), *citing In re Danny Thomas Properties II, Ltd*, 241 F.3d 959, 963 (8th Cir. 2001). Relevant factors for determining the feasibility of a plan may include: "(1) adequacy of a debtor's capital structure; (2) the earning power of the business; (3) economic conditions; (4) the ability of management; (5) the probability of the continuation of the same management; and (6) any other related matters which bear on the prospect of a sufficiently successful operation to enable performance under the provisions of the plan." *In re Trigona*, 2009 Bankr. LEXIS 5545 at *9 - *10.

In this case, the Debtor has not shown that the Plan is likely to succeed. According to the Disclosure Statement on pages 1-4 and 26-31, funding for the Plan depends on the Debtor entering into a debtor-in-possession financing facility with Metropolitan Partners Group (Metropolitan) and the debtor-in-possession financing being approved by the Bankruptcy Court. However, to date, the Debtor does not have an agreement by Metropolitan to fund the Plan. In addition, the Disclosure Statement and Plan propose to settle certain secured claims by, in part, transferring the assets of the Debtor to the secured creditors. However, the Disclosure Statement does not contain any information regarding the value or the nature of the assets to be transferred. Lastly, the distribution to general unsecured creditors depends on the investment in the Debtor's interest in certain real property in Anguilla. However, the Disclosure Statement does not provide any information regarding the Debtor's interest in the real property in Anguilla, the entity that will own the Debtor's interest in the real property in Anguilla or about the

entity that the Debtor proposes to distribute equity interests. Further, the Debtor's interest in the real property in Anguilla is listed in the Disclosure Statement as having a value of $ 2 million, while having a secured claim against it for $7 million. *Disclosure Statement* at 2.

Instead of making general references to possible debtor-in-possession financing, the estimated value of entities to be transferred to secured creditors, and vague references to the distribution of securities, the Debtor needs to provide specific information and documentation to support these transactions. Specifically, the Debtor needs to include the following information in the Disclosure Statement:

(i) A summary of the terms of the proposed debtor-in-possession financing, and the following documents and information: (a) documents showing the lender has agreed to provide the financing, (b) the timing for the loan, (c) when the Debtor will seek Bankruptcy Court approval of the loan, (d) what will happen if the loan is not executed and approved by the Bankruptcy Court, (e) the basis for the value of the entities to be liquidated to repay the loan, (f) the timing of the liquidation of those assets, and (g) what will happen if the assets are not liquidated or are sold for less than the expected value;

(ii) The basis for the value of entities to be transferred to secured creditors to reduce their claims, including but not limited to: the entity's business, its value, the basis for its value, ownership structure, capital structure, whether it is a public or private entity, the number of employees, current management, cash flow, cash projections, balance sheet, and appraisals;

(iii) Information concerning Debtor's interest in the real property in Anguilla, the entity that will own the Debtor's interest in the real property in Anguilla, and the entity that the Debtor proposes to distribute equity interests, and for each entity, the Disclosure Statement must include the following information: the name of the entity, its ownership, its value, the basis for its value, the ownership structure, capital structure, whether it is a public or private entity, the number of employees, current management, cash flow and cash projections, and balance sheets.

### III. The Debtor has Not Provided Any Information to Support the Issuance of Securities Under the Plan

Of particular concern to the SEC is that according to the Disclosure Statement on page 3, general unsecured creditors can "exercise the option to forego Cash and instead take a Pro Rata Distribution in equity in the Anguilla Project Interest which they can purchase at a 50% discount to the Debtor's imputed cost. Distribution(s) of Cash they would otherwise receive will be invested in the Anguilla Project Interest." As discussed above, there is no disclosure regarding the entity that will own the Debtor's interest in the Anguilla Property, the entity that is to develop the real property in Anguilla, and the entity in which the Debtor proposes to distribute equity interests.

If the Debtor is going to propose to issue securities, not only must there be adequate information regarding the entity in which he proposes to distribute equity interests and the entity's operations and assets, but the Debtor must include information regarding the registration requirements under Section 5 of the Securities Act of 1933 for securities issued in connection with a reorganization plan.

9

### IV. The Plan Should Provide that the SEC Claim is Excepted from Discharge Pursuant to Sections 523(a)(19) and 1141(d)(2) of the Bankruptcy Code

The Plan provides for the Debtor's discharge upon completion of payments under the Plan. *Disclosure Statement* at 41; *Plan* at 20. Pursuant to Section 523(a)(19), however, a discharge in an individual Chapter 11 or 7 bankruptcy case does not discharge the debtor from any debt arising from a judgment or settlement concerning a violation of the federal securities laws. *See* 11 U.S.C. § 523(a)(19); §1141(d)(2). Accordingly, the Disclosure Statement and Plan should be modified to provide that if the SEC is not paid in full, the SEC Claim is not subject to discharge and is excepted from such provision pursuant to Sections 523(a)(19) and 1141(d)(2), and that to the extent the SEC Claim is not paid in full, it will not be discharged and will continue to be owed by the Debtor.

### V. The Discharge, Injunction, and Release Provisions are Overbroad

In the Debtor's Plan, the Debtor seeks the approval of overbroad discharge, injunction, and release provisions. *Disclosure Statement* at 39 – 41; *Plan* at 19-20. The SEC objects to these provisions to the extent that they impair or enjoin the SEC's investigation, litigation, police and regulatory actions and available remedies. An SEC investigation and litigation to judgment are not stayed by the bankruptcy filing and can continue pursuant to the police and regulatory exception to the automatic stay. 11 U.S.C. § 362(b)(4). Section 362(b)(4) ensures that a governmental unit will not be enjoined from commencing any judicial or administrative proceedings that are necessary to protect the public. The SEC also objects to the overbroad discharge, injunction, and release

provisions to the extent they seek to release the Debtor or non-debtor third parties of liability in contravention of Section 524(e) of the Bankruptcy Code.[4]

In this case the discharge, injunction, and release provisions are overbroad and not supported by the facts or the law. These provisions are illegal and at odds with sound public policy thereby prejudicing the rights of creditors, including the SEC.

[the remainder of the page is intentionally left blank]

---

[4] Section 524(e) addresses the scope of a bankruptcy discharge and states, in relevant part, that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The Bankruptcy Code contemplates that a discharge only affects the debts of those submitting to its burdens. *See e.g. Green v. Welsh, 956 F.2d 30, 33 (2d Cir. 1992); In re Zale Corp., 62 F.3d 746, 760 (5th Cir. 1995); In re Lowenschuss*, 67 F.3d 1394, 1401 (9th Cir. 1995), *cert. denied,* 517 U.S. 1243 (1996). *See also In re XO Communications, Inc.*, 330 B.R. 394, 436 - 437 (Bankr. S.D.N.Y. 2005) *citing Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 141, 142 (2d Cir. 2005) ("Metromedia") ("the only explicit authorization in the Code for nondebtor releases is Bankruptcy Code Section 524(g), which authorizes releases in asbestos cases when specified conditions are satisfied, including the creation of a trust to satisfy future claims").

## **CONCLUSION**

For all the foregoing reasons, the Court should deny the approval of the Disclosure Statement and confirmation of the Plan, and grant the SEC such other and further relief as is just.

Dated: October 3, 2019
      New York, New York

                                    Respectfully Submitted,

                                    UNITED STATES SECURITIES AND
                                    EXCHANGE COMMISSION

                                    By:/s/ Patricia Schrage
                                    Patricia Schrage
                                    Senior Bankruptcy Counsel
                                    New York Regional Office
                                    Brookfield Place, 200 Vesey St., Suite 400
                                    New York, New York 10281
                                    Tel.: 212-336-1100
                                    Fax: 212-336-1348
                                    Schragep@sec.gov

Of Counsel: Alistaire Bambach
                Morgan Bradylyons